OPINION
This is an accelerated calendar appeal submitted on the record and the briefs of the parties. Thomas M. Swank ("appellant") appeals the March 22, 2001 judgment entry by the Mentor Municipal Court. Appellant was found guilty of driving under the influence of alcohol/drugs and driving without an operator's license. Specifically, appellant appeals the denial of his motion to suppress the evidence. For the following reasons, we affirm the decision of the lower court.
On October 5, 2000, at approximately 12:15 am, appellant was driving northbound on Andrews Road. Appellant turned into the parking lot of a building that housed three businesses. Of the three businesses, only the Wee Bit Lounge was opened at that time. Appellant proceeded to drive behind the building. Appellant then emerged from behind the building and into the parking lot of the Normandy Manor Apartments. Patrolman Matthew Collins stopped appellant's vehicle. Appellant was charged with driving under the influence of alcohol/drugs, in violation of R.C. 4511.19(A); driving with a suspended license, in violation of R.C. 4507.02(A); and driving without an operator's license, in violation of R.C. 4507.02. Appellant was also given a verbal warning for "shortcutting" across private property, a violation of the Mentor Traffic Code, Section 432.36.
On February 14, 2001, appellant filed a motion to suppress all evidence. Appellant contended that there was no probable cause or specific and articulable facts upon which to stop his vehicle. Appellant asserted that a hunch that he was "shortcutting" to the apartment complex was not an acceptable reason to intrude on his rights. Appellant added that the officer was unable to determine whether he stopped while he was behind the building. Appellant also claimed that riding along the white edge line of the road does not justify an investigative stop.
A suppression hearing was held on March 14, 2001. Patrolman Collins testified that he observed appellant's tire riding along the white edge line of the road; however, he did not stop appellant for that reason, nor did he observe any other signs of alcohol impairment. He testified that he became suspicious when he observed appellant drive behind the closed businesses because there were complaints of illegal dumping in the dumpsters behind the building, illegal drug and alcohol use behind the building, and juveniles loitering and causing property damage behind the building. Patrolman Collins noted that there was no parking for the Wee Bit Lounge behind the building.
Patrolman Collins further testified that, after a ten (10) second lapse, he then observed appellant emerge from behind the building and into the parking lot of the Normandy Manor Apartments, near Building E. Patrolman Collins testified that he stopped appellant to ascertain why he was behind the building at that time of night and because he had violated an ordinance by "shortcutting" through the property. Patrolman Collins added that he informed appellant that he was stopped for "shortcutting." Patrolman Collins testified that when he asked appellant why he was "shortcutting," appellant responded that he was going to see his girlfriend who lived in Building E. While questioning appellant, Patrolman Collins stated that he observed that appellant's eyes were bloodshot and glassy. Patrolman Collins gave appellant a verbal warning as to the "shortcutting" violation, which was also noted on the ticket issued to appellant along with the charges of driving while under the influence of alcohol/drugs, driving with a suspended license, and driving with no operator's license.
Appellant also testified during the suppression hearing. Appellant stated that he pulled into the Wee Bit Lounge parking lot with the intent of going in because he thought that he left his glasses there earlier. Appellant testified that he went around the back of the building and put his vehicle in park for a split second; however, he decided not to go in because he was going over to his friend's house. Appellant stated that he then pulled out and went to her building in the Normandy Manor Apartments. Appellant explained that he was behind the building only for a second or two and decided not to go inside. Contrary to Patrolman Collins' testimony, appellant testified that there were parking spaces in the back of the building.
At the close of the evidence, the trial court made several observations. Specifically, the trial court stated that if one was going to stop to find his glasses, particularly at night, the normal thing would be to drive to the front door. The trial court questioned why appellant, if he did stop his vehicle, did not go in to see if his glasses were there. The trial court also indicated that appellant's intent was not the determining point; rather, it was what occurred from the police officer's standpoint. The trial court noted that the police were asked to closely supervise the area behind the building, which was what Patrolman Collins was doing. The trial court stressed that the circumstances are viewed from Patrolman Collins' standpoint. The trial court determined that, based on the circumstances, Patrolman Collins had a right to investigate the matter since an ordinance prohibited shortcutting through private property. The trial court explained that the circumstances included the fact that appellant was observed driving to the back of a business with no indication that he was stopping or going to do business. The trial court noted that it was nighttime and there were previous instances of criminal activity behind the building. Consequently, the trial court denied appellant's motion to suppress the evidence.
Based on the trial court's decision, appellant entered a no contest plea, reserving his right to appeal. The trial court then found appellant guilty of driving under the influence of alcohol/drugs and driving without an operator's license. The driving under suspension charge was dismissed. In particular, as to the driving under the influence of alcohol/drugs conviction, appellant was sentenced to one (1) year in jail with work release and a fine of one thousand (1,000) dollars. For the no operator's license conviction, appellant was sentenced to six (6) months in jail with work release and a five hundred (500) dollar fine. The sentences were ordered to run consecutively. Appellant's driver's license was suspended for five (5) years, and appellant was placed on probation for three (3) years with chemical evaluation and intervention. The trial court's sentence was journalized in a judgment entry filed on March 22, 2001.
Thereafter, appellant filed a timely notice of appeal, asserting one assignment of error. On March 27, 2001, the trial court granted appellant's motion to stay the execution of his sentence pending the outcome of his appeal.
In appellant's sole assignment of error, appellant contends that the trial court erred in denying his motion to suppress since the police officer did not have probable cause or specific and articulable facts to stop him. Appellant asserts that no signs of alcohol impairment or erratic driving were observed and he did not shortcut through the parking lot. Appellant argues that he entered the parking lot with the intention of going to the Wee Bit Lounge, but changed his mind and proceeded to his friend's apartment. Appellant further posits that the police officer, who did not see him behind the building, was acting on a hunch that he was engaging in criminal activity simply because he drove behind the building.
At a hearing on a motion to suppress, a trial court, functioning as the trier of fact, is in the best position to evaluate the evidence, judge the credibility of the witnesses, and resolve the factual issues. Statev. Mills (1992), 62 Ohio St.3d 357, 366. When reviewing a trial court's ruling on a motion to suppress, an appellate court is bound to accept the trial court's factual determinations if they are supported by competent and credible evidence. State v. Searls (1997), 118 Ohio App.3d 739, 741. Once an appellate court accepts the trial court's factual determinations as true, the appellate court must conduct a de novo review of the trial court's application of the law to those facts. Id.
In the case sub judice, the trial court determined that, from Patrolman Collins' standpoint, he observed appellant drive through the area behind a commercial building. The trial court determined that Patrolman Collins had a right to check it out since there was an ordinance prohibiting shortcutting through private property. The trial court also pointed out the fact that there was testimony that it was nighttime and that there were previous instances of criminal activity in that area. The trial court was in the best position to evaluate the evidence, judge the credibility of Patrolman Collins and appellant, and resolve the factual issues presented in the evidence. There is no indication from Patrolman Collins' testimony that he was not credible or that his testimony was not competent. Thus, we are bound to accept the trial court's factual findings as true since they are supported by competent and credible evidence. However, we must now independently review the trial court's application of the law to those factual determinations.
The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual, provided the officer has the requisite reasonable suspicion, based upon specific and articulable facts, that a crime has occurred or is imminent. State v.Gedeon (1992), 81 Ohio App.3d 617, 618, citing Terry v. Ohio (1968),392 U.S. 1; see, also, Maumee v. Weisner (1999), 87 Ohio St.3d 295, 296. In determining whether an investigative stop is proper, a court must examine "the totality of the surrounding circumstances," which provides the basis for the officer's suspicion. Mentor v. Schoenfeld (Aug. 20, 1999), Lake App. No. 98-L-141, unreported, 1999 Ohio App. LEXIS 3884, at 3-4, citing State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus; see, also, United States v. Arvizu (2002), Case No. 00-1519, 2002 U.S. LEXIS 490 (a court must look at the "totality of the circumstances" to see if the officer has a "particularized and objective basis" for suspecting legal wrongdoing). The Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion that criminal activity "may be afoot." Arvizu, supra. Clearly, the determination as to whether reasonable suspicion exists is examined from the police officer's point of view, not whether a defendant can explain the situation.
Additionally, this court has held that any traffic violation, even a minor traffic violation, witnessed by a police officer is, standing alone, sufficient grounds to stop the vehicle observed violating the ordinance. State v. Cosari (Mar. 30, 2001), Portage App. No. 99-P-0120, unreported, 2001 Ohio App. LEXIS 1562, at 6; State v. Burdick (May 26, 2000), Geauga App. No. 98-G-2209, unreported, 2000 Ohio App. LEXIS 2264, at 13; State v. Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156, unreported, 1996 Ohio App. LEXIS 3361, at 8. Once an officer has stopped a vehicle for a minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may proceed to investigate the detainee for driving under the influence if there exists reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts. Burdick at 13-14, citing Yemma at 6-8. Of relevance to the instant case, Mentor Traffic Code, section 432.36, shortcutting across private property, provides:
 "No operator of a motor vehicle shall enter upon private property for the sole purpose of driving across such property, between abutting streets or other public ways thereof. The failure to stop on such property in connection with or in furtherance of the objects of enterprise or activities being conducted on the property shall constitute prima-facie evidence of the violation." (Emphasis added.)
 In the case before us, having considered the totality of the circumstances and accepting the trial court's factual determinations as true, we conclude that Patrolman Collins had reasonable suspicion to believe that appellant was shortcutting through the private property. From Patrolman Collins' viewpoint, it was reasonable for him to conclude that appellant was shortcutting through the back of the building to get to the apartment complex. There was only a lapse of about ten seconds between the time that appellant drove behind the building and the time that he emerged and proceeded to the Normandy Manor Apartments. It was reasonable for Patrolman Collins to stop appellant since he observed a violation of an ordinance. As stated previously, any traffic violation, even a minor traffic violation, witnessed by a police officer is, standing alone, sufficient grounds to stop the vehicle observed violating the ordinance. Patrolman Collins had the requisite reasonable suspicion, based upon specific and articulable facts, that appellant had shortcutted through the property.
For the foregoing reasons, appellant's sole assignment of error is without merit. The judgment of the Mentor Municipal Court is affirmed.
CHRISTLEY, P.J., NADER, J., concur.