OPINION
{¶ 1} Defendant Brett A. Kraft appeals a judgment of the Municipal Court of Mount Vernon, Ohio, which convicted and sentenced him for driving without an operator's license in violation of R.C. 4507.02(A)(1), after a jury found him guilty. Appellant assigns twelve errors to the trial court:
 {¶ 2} "1. JUDGE SURGEON [SIC] FAILED TO ANSWER ANY QUESTIONS AT THE ARRAINGMENT [SIC]. JUDGE SPURGEON IGNORED THE DEFENDANT'S RIGHTS UNDER THE SIXTH AMENDMENT AND ENTERED A PLEA WHICH WAS REVOKED BY THE DEFENDANT, JUDGE SPURGEON ALSO IGNORED THE FACT THAT THE PROSECUTION HAD NOT ANSWERED THE DEMAND FOR BILL OF PARTICULARS AT TRIAL. PAGE 54 LINES 16-23.
 {¶ 3} "2. JUDGE SPURGEON AND THE PROSECUTION FAILED TO ADDRESS THE MERITS OF ANY OF THE ISSUES IN THE NOTICE OF JURISDICTIONAL DEFECT AND DEMAND TO DISMISS FILED MONTHS BEFORE THE TRIAL AND FAILED TO GIVE ANY FINDING OF FACTS AND CONCLUSIONS OF LAW AND THEREBY DENYING THE DEFENDANT DUE PROCESS UNDER THE FIFTH AMENDMENT.
 {¶ 4} "3. DEFENDANT DID OBJECT TO JUDGE SPURGEON'S RULING ON THE NOTICE OF JURISDICTIONAL DEFECT AND DEMAND TO DISMISS AND FILED A RENEWED NOTICE AND DEMAND. AGAIN, JUDGE SPURGEON DENIED THE DEFENDANT DUE PROCESS BY IGNORING THE OBJECTION AND DENIED THE RENEWED NOTICE OF JURISDICTIONAL DEFECT AND DEMAND TO DISMISS AT TRIAL. PAGE 53, LINES 24-PAGE 54.
 {¶ 5} "4. DEFENDANT FILED AN AFFIDAVIT OF BIAS AND PREJUDICE AGAINST JUDGE SPURGEON, JUDGE ORTHO [SIC] EYESTER IGNORED ALL OF THE ISSUES AND STATED HE FOUND NO PREJUDICE AND IT WAS `NOT WELL TAKEN.' JUDGE ORTHO [SIC] EYESTER FAILED TO GIVE ANY FINDING OF FACTS AND CONCLUSIONS OF LAW TO SUPPORT HIS DECISION.
 {¶ 6} "5. JUDGE SPURGEON AND THE PROSECUTION IGNORED THE `RETURN OF COLORABLE PRESENTATION BY AUTHORITY OF OHIO REVISED CODE SECTION 1301.60 AND UNIFORM COMMERCIAL CODE 1301.60 AND UNIFORM COMMERCIAL CODE 3-305' AND THEREBY DENYING THE DEFENDANT DUE PROCESS UNDER THE FIFTH AMENDMENT.
 {¶ 7} "6. JUDGE SPURGEON IGNORED THE MAJORITY OF SGT. MARK RUTHERFORD'S TESTIMONY WHEN HE DENIED THE DEFENDANT'S MOTION TO SUPPRESS. JUDGE SPURGEON'S FINDINGS OF ACTS AND CONCLUSIONS OF LAW ONLY GAVE MINOR PORTIONS OF THE FACTS AND NO BASIS IN LAW AS TO HOW HE REACHED HIS DECISION THAT SGT. RUTHERFORD HAD `REASONABLE CAUSE.'
 {¶ 8} "7. JUDGE SPURGEON DENIED DEFENDANT'S MOTION TO VOID JUDGEMENT [SIC] BASED ON THE FACT HIS DECISION ON THE MOTION TO SUPPRESS WERE NOT BASED IN LAW. JUDGE SPURGEON GAVE NO REASON WHATSOEVER FR HIS ACTIONS.
 {¶ 9} "8. PAGE 75 LINES 18-21, AT THE TRIAL JUDGE SPURGEON STATED IN FRONT OF THE JURY `HE (SGT. RUTHERFORD) DOESNT [SIC] NEED PROBABLE CAUSE TO BELIEVE YOU COMMITTED A CRIME TO STOP YOU. ALL HE NEEDS IS REASONABLE CAUSE TO STOP YOU.' THIS AMOUNTS TO PRACTICING LAW FROM THE BENCH. WHEN THE DEFENDANT ASKED JUDGE SPURGEON IF HE WAS REFERRING TO THE FOURTH AMENDMENT, THE QUESTION WAS IGNORED. PAGE 75 LINES 18-21.
 {¶ 10} "9. AT TRIAL JUDGE SPURGEON DENIED DEFENDANT'S MOTION TO DISMISS ON THE GROUNDS THAT THE PLAINTIFF FAILED TO BUILD A PRIMA FACIE CASE UNDER THE FOURTH AMENDMENT. THE PROSECUTION IGNORED THE FOURTH AMENDMENT ISSUE. JUDGE SPURGEON GAVE NO BASIS IN LAW WHY THE MOTION WAS DENIED. PAGE 82 LINE 8-10.
 {¶ 11} "10. PAGE 93 LINES 20-23, AT TRIAL JUDGE SPURGEON DISALLOWED THE DEFENDANT TO CALL A WITNESS AND BRING FORTH POINTS OF LAW TO ESTABLISH WHAT CONSITUTES [SIC] `PROBABLE CAUSE' UNDER THE FOURTH AMENDMENT.
 {¶ 12} "11. PAGE 92 LINES 1-3, AT TRIAL JUDGE SPURGEON OVERRULED DEFENDANT'S OBJECTION TO ALLOWING EXHIBIT A BECAUSE SGT. RUTHERFORD WAS WITHOUT PROBABLE CAUSE UNDER THE FOURTH AMENDMENT.
 {¶ 13} "12. PAGE 116-117 JUDGE SPURGEON'S SENTENCE TO THE DEFENDANT WAS TOTALLY UNREASONABLE AND UNLAWFUL. FIVE YEARS PROBATION NOT LEGAL FOR MISDEMEANOR NOR CAN HE REQUIRE TO OBTAIN A LICENSE FOR A CONDITION OF A SUSPENDED SENTENCE."
 {¶ 14} At the hearing on the motion to suppress, Deputy Mark Rutherford testified on April 19, 2001, at around 5:01 p.m., he received a dispatch that Dagmar Marmathy, a resident of Brinkhaven had called in a complaint about a suspicion vehicle and person. Marmathy reported a suspicious person was driving a maroon Buick with the license plate number CNQ1981. The occupant of the vehicle was walking around door to door asking if anyone had seen his dog.
 {¶ 15} Deputy Rutherford proceeded towards the Brinkhaven area, and encountered the vehicle in question driving towards him and away from Brinkhaven. Appellant was the driver of the vehicle.
 {¶ 16} Deputy Rutherford stopped the vehicle, and asked appellant for his driver's license. When appellant indicated he didn't have a driver's license, the deputy ran the information through LEADS, and learned appellant's drivers license had expired in 1991. Deputy Rutherford placed appellant under arrest and had his vehicle towed.
 {¶ 17} On cross-examination, Deputy Rutherford testified the department responds to every complaint. Deputy Rutherford conceded he did not suspect any crime was committed, but he would not know until he had checked out the complaint. Deputy Rutherford conceded he had not observed any moving violations, but had stopped appellant solely on the report of the suspicious person and the description of his car.
 VI {¶ 18} In his sixth assignment of error, appellant argues the court erred in overruling his motion to suppress.
 {¶ 19} Recently, the Ohio Supreme Court has had occasion to review what constitutes reasonable suspicion to justify a dispatch precipitating an investigatory stop of a vehicle. In City of Maumee v. Weisner,87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507, the Supreme Court held:
 {¶ 20} "(1) Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.
 {¶ 21} (2) A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." Syllabus by the court.
 {¶ 22} In Weisner case, an officer received a police dispatch concerning a suspected crime of drunk driving in progress. The dispatch was based upon a call from an eyewitness motorist who was following the car at the time. The caller reported the make, color, and license plate number of the car and described it as "weaving all over the road." The caller also identified himself to the police dispatcher, providing his name and cellular and home phone numbers. The caller continued to follow the car, describing its activities, while the patrolman attempted to locate it. After the caller alerted the dispatcher that the suspicious car had stopped at a railroad crossing, the officer pulled into a parking lot opposite the railroad crossing to wait. After the train passed, the officer stopped the car without personally observing the car weaving or driving erratically.
 {¶ 23} In Weisner, the court cited United States v. Hensley
(1985), 469 U.S. 221, 105 Sup. Ct. 675, 83 L.Ed.2d 604. In Hensley, the U.S. Supreme Court held a police officer need not always have knowledge of the specific facts justifying a stop, and may rely upon a police dispatcher or flyer. The U.S. Supreme Court reasoned that the admissibility of the evidence uncovered during such a stop should not rest on whether the officer who is relying on the dispatcher or flyer was aware of the facts, but rather whether the officers who issued the flyer dispatch possessed reasonable suspicion. Therefore, if the dispatch was issued in the absence of reasonable suspicion, then the stop relying upon the dispatch violates the Fourth Amendment.
 {¶ 24} Turning to the issue of reasonable suspicion, the Weisner
court held to justify an intrusion on an individual's Fourth Amendment interest, the officer must demonstrate specific and articulable facts, which taken together with rational inferences from those facts, reasonably warranted the intrusion, Weisner at 299, citing Terry v. Ohio
(1968), 392 U.S. 1. The court noted reasonable suspicion does not involve a strict inflexible standard, but rather involves a consideration of the totality of the circumstances, Id., citing United States v. Cortez
(1981), 449 U.S. 411, 101 Sup. Ct. 90, 66 L.Ed.2d 621. The totality of the circumstances involves both the context of the information possessed by police, and its degree of reliability, Alabama v. White (1990),496 U.S. 325, 110 Supreme Court 2412, 110 L.Ed.2d 301.
 {¶ 25} Contrasting with the Weisner case, here, although the caller identified herself to the dispatcher, and indicated the location, the only suspicious behavior she could articulate was that appellant was looking for a lost dog. Nowhere in the suppression hearing was any testimony elaborating on this to indicate why this was a suspicious action rather than simply a man looking for a dog. Deputy Rutherford did not observe appellant looking for his dog, nor did he observe any traffic violation.
 {¶ 26} The State has the burden of presenting evidence to demonstrate the warrantless search or seizure meets Fourth Amendment standards of reasonableness, Weisner at 297. We have reviewed the transcript of the suppression hearing, and we find considering the totality of the circumstances, the dispatcher lacked reasonable suspicion of criminal activity which justified the dispatch culminating in the investigatory stop of the appellant's car.
 {¶ 27} The sixth assignment of error is sustained.
 {¶ 28} We find the other assignments of error are moot.
 {¶ 29} For the foregoing reasons, the judgment of the Municipal Court of Mount Vernon, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.
By Gwin, P.J., Farmer, J., and Wise, J., concur.
topic: criminal law — traffic stop — reasonable suspicion.