CITY OF MAUMEE, APPELLANT, *v*. WEISNER, APPELLEE.

[Cite as *Maumee v. Weisner* (1999), 87 Ohio St.3d 295.]

*Criminal law — Police officer makes an investigative stop of an automobile, relying solely upon a dispatch — State must demonstrate at suppression hearing that facts precipitating the dispatch justified a reasonable suspicion of criminal activity — Telephone tip can, by itself, create reasonable suspicion justifying an investigative stop, when.*

1.    Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.

2.    A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability.

(No. 98-2016 — Submitted September 21, 1999 — Decided December 22, 1999.)

APPEAL from the Court of Appeals for Lucas County, No. L-97-1409.

On August 20, 1997, Patrolman Timothy Roberts of the city of Maumee Police Department received a police dispatch concerning a suspected crime of drunk driving in progress. The dispatch was based upon a call from an eyewitness motorist who was following the car at that time. The caller reported the make,

color, and license plate number of the car and described it as "weaving all over the road." The caller also identified himself to the police dispatcher, providing his name and cellular and home phone numbers. The caller continued to follow the car, describing its activities while Patrolman Roberts attempted to locate it. When the caller alerted the dispatcher that the car had stopped at a railroad crossing, Roberts pulled into a parking lot opposite the railroad crossing to wait. After the train passed, Roberts spotted the car and radioed for verification. Approximately thirty to forty seconds elapsed, during which Roberts did not witness the car either driving erratically or weaving. After receiving confirmation from the dispatcher, Roberts stopped the car, questioned the driver, Glenn Weisner, and arrested him for driving under the influence of alcohol in violation of Maumee Codified Ordinances 333.01(a)(1). Weisner later submitted to breath analysis and was charged with operating a motor vehicle while having a prohibited concentration of alcohol in violation of Maumee Codified Ordinances 331.01(a)(3).

Weisner moved to suppress the evidence obtained from Roberts's stop of his car. At the hearing, the city called only Roberts to testify as to the events of that night. The trial court considered his testimony sufficient to show that he had reasonable suspicion that Weisner was driving under the influence and denied Weisner's motion to suppress. Weisner then pleaded no contest to violating

2

Maumee Codified Ordinances 333.01(a)(3) and was sentenced to serve three days in a drunk-driving intervention program.

Weisner appealed the constitutionality of the stop to the court of appeals. That court reversed the trial court's decision, holding that the city had failed to meet its burden of proving that the dispatcher had reasonable suspicion to issue the dispatch. *Maumee v. Weisner* (Aug. 21, 1998), Lucas App. No. L-97-1409, unreported, 1998 WL 526772. The cause is now before the court upon the allowance of a discretionary appeal to decide the constitutionality of a stop based upon a citizen informant's telephone tip.

_____

*John B. Arnsby,* Maumee Municipal Prosecutor*,* for appellant.

*Bischoff, Kenney & Niehaus* and *Stephen M. Sadowski,* for appellee.

*Betty D. Montgomery*, Attorney General*, Edward B. Foley,* State Solicitor, and *Stephen P. Carney*, Associate Solicitor, urging reversal for *amicus curiae,* Ohio Attorney General.

*David H. Bodiker,* Ohio Public Defender*, David Hanson* and *Siobhan O'Keeffe,* Assistant State Public Defenders, urging affirmance for *amicus curiae,* Ohio Public Defender.

_____

3

**COOK, J.** This case involves a Fourth Amendment challenge to an officer's stop of a suspected drunk driver. Specifically, we have been asked to determine whether a citizen informant's telephone tip may provide the sole basis for an officer's stop of a motorist suspected of driving under the influence. We resolve this issue in favor of the city of Maumee and hold that a telephone tip can, by itself, create reasonable suspicion justifying an investigative stop where the tip has sufficient indicia of reliability.

## I. Burden of Proof at Suppression Hearing

### A

As a preliminary matter, we must resolve a debate among Ohio appellate courts concerning the state's burden of proof at a suppression hearing. Despite the focus of the parties' briefs, it was upon this issue that the appellate court's decision turned. Specifically in conflict is whether he state must prove, when an investigative stop is made in sole reliance upon a police dispatch, that the information known to the *officer issuing the dispatch* was sufficient to justify the stop, or whether the *stopping officer's* testimony that he relied upon the dispatch is, by itself, sufficient. Following *State v. Hill* (1981), 3 Ohio App.3d 10, 3 OBR 10, 443 N.E.2d 198, the court below held that the state is required to prove that the information known to the dispatcher was sufficient to raise a reasonable suspicion

4

of criminal activity.  Concluding that the city failed to meet this burden of proof, the appellate court reversed the trial court's decision.

Generally, at a suppression hearing, the state bears the burden of proving that a warrantless search or seizure meets Fourth Amendment standards of reasonableness. 5 LaFave, Search and Seizure (3 Ed.1996), Section 11.2(b).  In the case of an investigative stop, this typically requires evidence that the officer making the stop was aware of sufficient facts to justify it.  *Terry v. Ohio* (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906.  But when an investigative stop is made in sole reliance upon a police dispatch, different considerations apply.

A police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer.  *United States  v. Hensley* (1985), 469 U.S. 221, 231, 105 S.Ct. 675, 681, 83 L.Ed.2d 604, 613. This principle is rooted in the notion that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information."  *Id.* at 231, 105 S.Ct. at 682, 83 L.Ed.2d at 614, quoting *United States v. Robinson* (C.A.9, 1976),  536 F.2d 1298, 1299.  When a

dispatch is involved, therefore, the stopping officer will typically have very little knowledge of the facts that prompted his fellow officer to issue the dispatch. The United States Supreme Court has reasoned, then, that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers *relying upon a dispatch or flyer* "were themselves aware of the specific facts which led their colleagues to seek their assistance." It turns instead upon "whether the officers who *issued* the flyer" or dispatch possessed reasonable suspicion to make the stop. (Emphasis *sic*.) *Id.* at 231, 105 S.Ct. at 681, 83 L.Ed.2d at 613 (discussing and applying *Whiteley v. Warden, Wyoming State Penitentiary* [1971], 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, to reasonable suspicion in the context of a police flyer). Thus, "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." *Hensley,* 469 U.S. at 232, 105 S.Ct. at 682, 83 L.Ed.2d at 614.

Many courts in Ohio and other jurisdictions have interpreted *Hensley* and *Whiteley* to require proof at the suppression hearing that the officers *issuing the dispatch* possessed sufficient knowledge of facts or information to justify the stop, where the *stopping officer* himself did not. See *State v. Hill*, *supra*; *State v. Ramsey* (Sept. 20, 1990), Franklin App. Nos. 89AP-1298 and 89AP-1299,

6

unreported, 1990 WL 135867. Other Ohio courts have held instead that an officer's statement that he relied upon a dispatch is, by itself, sufficient to justify the stop, regardless of the knowledge of the officer issuing the dispatch. See, *e.g.*, *State v. Good* (1987), 37 Ohio App.3d 174, 525 N.E.2d 527; *State v. Janda* (Apr. 14, 1993), Lorain App. No. 92CA005416, unreported, 1993 WL 120549. See, also, *State v. Penn* (Aug. 2, 1994), Franklin App. No. 93AP-953, unreported, 1994 WL 409758.

We believe the latter approach is inconsistent with United States Supreme Court precedent and fails to adequately protect the citizen's Fourth Amendment rights. Accordingly, we clarify here that where an officer making an investigative stop *relies solely upon a dispatch*, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.

B

Given that the state must present evidence of the facts known to the dispatcher in these situations, the next question concerns the type of evidence that may be used for this purpose. The appellate court below concluded that the city's failure to offer the testimony of either the dispatcher or the citizen informant rendered its evidence insufficient. In this assessment of the sufficiency of the

7

evidence, however, the court, without explanation, ignored Roberts's testimony about the facts relayed from the caller to the dispatcher. While a stopping officer in a dispatch situation will typically be unaware of the facts known to the dispatcher, this case is different. Here, Roberts testified that the dispatcher relayed to him the facts precipitating the dispatch.[1]

We believe that the appellate court should have considered Roberts's testimony in assessing whether the facts known to the dispatcher were sufficient to justify the stop. First, we note that the hearsay rule does not preclude courts' consideration of this evidence, because "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz* (1980), 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424, 425. We further note that no one argued at any point in the proceedings that the officer's testimony was unreliable. Roberts's testimony regarding the information that the dispatcher knew, therefore, should have been analyzed to determine whether the burden was met.

Given that this evidence should have been considered, we turn now to our analysis of the facts known to the dispatcher. Specifically, we must determine whether those facts, which came solely from a citizen informant's tip, were sufficient to create a reasonable suspicion justifying the stop.

8

## II.     Reasonable Suspicion

The proscriptions of  the Fourth Amendment impose a standard of reasonableness upon the exercise of discretion by government officials.  *Delaware v. Prouse* (1979), 440 U.S. 648, 653-654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667.  "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  *Id*. at 654, 99 S.Ct. at 1396, 59 L.Ed.2d at 667-668.  To justify a particular intrusion, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts,  reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

The United States Supreme Court has interpreted the Fourth Amendment to permit police stops of motorists in order to investigate a reasonable suspicion of criminal activity.  *Id*. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906-907.  The reasonable suspicion necessary for such a stop, however, eludes precise definition. Rather than involving a strict, inflexible standard, its determination involves a consideration of  "the totality of the circumstances."  *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 628-629.  Under this analysis,  "both the content of information possessed by police and its degree

of reliability" are relevant to the court's determination. *Alabama v. White* (1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309.

Where, as here, the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. See *id*. The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. Factors considered " 'highly relevant in determining the value of [the informant's] report' " are the informant's veracity, reliability, and basis of knowledge. *Id.* at 328, 110 S.Ct. at 2415, 110 L.Ed.2d at 308, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543.

To assess the existence of these factors, it is useful to categorize informants based upon their typical characteristics. Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant. While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's

10

reliability. The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. *Alabama v. White,* 496 U.S. at 329, 110 S.Ct. at 2415, 110 L.Ed.2d at 308. The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: "[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary*." Illinois v. Gates*, 462 U.S. at 233-234, 103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545.

In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. In *United States v. Pasquarille* (C.A.6, 1994), 20 F.3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to " 'idle rumor or irresponsible conjecture,' " quoting *United States v. Phillips* (C.A.5, 1984), 727 F.2d 392, 397. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant. " 'Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than

an average citizen * * * in the position of a crime * * * witness.' " *Easton v. Boulder* (C.A.10, 1985), 776 F.2d 1441, 1449, quoting LaFave, Search and Seizure (1978) 586-587. See, also, *Edwards v. Cabrera* (C.A.7, 1995), 58 F.3d 290, 294.

Many Ohio appellate courts have also accorded the identified citizen witness higher credibility.  In fact, several have used this principle to uphold a telephone tip made in fact situations nearly mirroring this one.  In *State v. Loop* (Mar. 14, 1994), Scioto App. No. 93CA2153, unreported, 1994 WL 88041, for instance, the court held that a telephone call from a citizen stating that a motorist might be having a seizure was sufficient to justify an investigative stop that produced evidence of drunken driving.  The court reasoned that " '[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable.' "  *Id.* at 5, quoting *State v. Carstensen* (Dec. 18, 1991), Miami App. No. 91-CA-13, unreported, at *4, 1991 WL 270665.  The *Carstensen* court found a stop based upon a 911 call describing a drunk driver sufficiently justified, although the informant there was unidentified.  See, also, *Fairborn v. Adamson* (Nov. 17, 1987), Greene App. No. 87-CA-13, unreported, at 4-5, 1987 WL 20264; *State v. Jackson* (Mar. 4, 1999), Montgomery App. No. 17226, unreported, at *5, 1999 WL 115010, observing generally that " 'a tip from an identified citizen informant who is a

12

victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge,' " quoting *Centerville v. Gress* (June 19, 1998), Montgomery App. No. 16899, unreported, at *4-5, 1998 WL 321014.

Given the greater degree of reliability typically accorded the identified informant, the central issue disputed between the parties is whether the informant here should be considered identified or anonymous. Because Weisner characterizes the motorist as an anonymous informant, he contends that additional corroborating facts from the officer would have been necessary to create a reasonable suspicion. Although the motorist identified himself, Weisner argues that the identification easily could have been fabricated and therefore adds nothing to his reliability. The city of Maumee and *amicus curiae* Ohio Attorney General urge that the information provided by the citizen informant was sufficient to identify him and therefore to accord him greater reliability. Identified citizen witnesses, they insist, are presumptively reliable because of their motivation, their basis of knowledge, and their identification. Thus, the issue becomes whether the information provided by the informant was adequate to consider him identified.

Courts have been lenient in their assessment of the type and amount of information needed to identify a particular informant. Many courts have found, for instance, that identification of the informant's occupation alone is sufficient. In

13

*United States v. Pasquarille*, *supra*, the court concluded that, although the informant's name was unknown, information that he was a transporter of prisoners was enough to remove him from the anonymous informant category. Likewise, in *Edwards v. Cabrera*, *supra*, the court was satisfied with the knowledge that the informant was a bus driver whose identity was ascertainable. See, also, *State v. Loop*, *supra.* Furthermore, at least one court has considered simple face-to-face contact to be enough. In *State v. Ramey* (1998), 129 Ohio App.3d 409, 717 N.E.2d 1153, the court held that an unnamed informant who flagged down an officer to provide information concerning a suspected drunk driver was in no way "anonymous": "There is nothing even remotely anonymous, clandestine, or surreptitious about a citizen stopping a police officer on the street to report criminal activity." *Id.* at 416, 717 N.E.2d at 1158.

Viewing the information here in this context, we are convinced that it was sufficient to identify the informant and remove him from the anonymous informant category. It is undisputed that the informant provided identifying information including his name, his cellular phone number, and his home phone number. We are unpersuaded by Weisner's argument that the identification is worthless because it could have been fabricated. The caller's continued contact with the police dispatcher throughout the incident sharply reduces that possibility. In fact, we

14

infer from his willingness to continue assisting Patrolman Roberts that he may have considered face-to-face police contact a possibility. With that in mind, he would have been unlikely to offer a false report because of the potential consequences. We believe that greater credibility may be due an informant such as this who initiates and permits extended police contact rather than one who phones in a tip and retreats from any further police interaction. Accordingly, we consider the citizen informant to have identified himself sufficiently to accord him greater reliability than an anonymous informant.

Having resolved this issue, we emphasize that our categorization of the informant as an identified citizen informant does not itself determine the outcome of this case. Instead it is one element of our totality of the circumstances review of this informant's tip, weighing in favor of the informant's reliability and veracity. Continuing our review, we believe that the informant's basis of knowledge also furthers his credibility. Typically, a personal observation by an informant is due greater reliability than a secondhand description. *Gates,* 462 U.S. at 233-234, 103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545. Here, the citizen's tip constituted an eyewitness account of the crime. His version of that night was not mere rumor or speculation—it was a firsthand report of the events as they happened. Also significant is the fact that the tip was an exact relay of the circumstances as they

15

were occurring.  Immediately upon witnessing the events, the citizen described them to the dispatcher.  This immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory.

We also believe that the informant's motivation supports the reliability of his tip.  According to the evidence, the informant reported that Weisner was weaving all over the road.  He made this report from the perspective of a  motorist sharing the road with an another motorist driving erratically.  We can reasonably infer from these circumstances that he considered Weisner a threat to him personally as well as to other motorists and that he was motivated, therefore, not by dishonest and questionable goals, but by his desire to eliminate a risk to the public's safety.

Taken together, these factors persuade us that the informant's tip is trustworthy and due significant weight. The informant was an identified citizen who based his knowledge of the facts he described upon his own observations as the events occurred.  As a result, his tip merits a high degree of  credibility and value, rendering it sufficient to withstand the Fourth Amendment challenge without independent police corroboration.  Accordingly, the dispatch based upon this tip was issued on sufficient facts to justify Patrolman Roberts's investigative stop.

The judgment of the court of appeals is reversed.

16

*Judgment reversed.*

DOUGLAS, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., BOWMAN and F.E. SWEENEY, JJ., dissent.

DONNA BOWMAN, J., of the Tenth Appellate District, sitting for RESNICK, J.

**FOOTNOTE:**

1.      Roberts's testimony suggests that he may have learned of some of the facts after the stop was completed.  Were it clear that he possessed all the information known to the dispatcher about the caller at the time he made the stop, we could have analyzed Roberts's own reasonable suspicion, without considering the dispatcher.  We require evidence of the dispatcher's knowledge not as an additional burden upon the state, but only to allow the stopping officer to rely upon the dispatch without his having to cross-examine the dispatcher as to his basis of knowledge.  See *United States v. Hensley* and *United States v. Robinson*, *supra*.

————————————

**FRANCIS E. SWEENEY, Sr., J., dissenting**.  Respectfully, I dissent. In my opinion, a telephone caller's unverified report of erratic driving does not, standing alone, provide reasonable suspicion to warrant an investigative traffic stop.  It is imperative that law enforcement officers possess a reasonable and articulable suspicion to warrant an investigative stop of a vehicle.  While deterrence of drunk

driving remains of utmost importance, this policy needs to be carefully balanced against an individual's constitutional right to be free from unreasonable searches and seizures. An individual's Fourth Amendment right should not be forfeited simply to promote this public policy.

The cornerstone of the Fourth Amendment is the right of the people to be free from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In the context of an investigatory stop of an automobile, the stopping of the car and detaining its occupants constitute a seizure. *Delaware v. Prouse* (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667. However, the Fourth Amendment is not violated if the officer has reasonable suspicion, based on articulable facts, that the person stopped has engaged, is engaged, or is about to engage in criminal activity. *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *Delaware v. Prouse*, 440 U.S. at 653-655, 99 S.Ct. at 1396-1397, 59 L.Ed.2d at 667-668.

In forming reasonable suspicion, a police officer may rely on outside information provided directly to him, such as tips from informants, or on information relayed to him via a flyer or radio dispatch. *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. However, where an informant's tip is

relied upon, the informant's veracity and reliability and his basis for knowledge must be assessed under the totality of the circumstances to determine whether the tip establishes reasonable suspicion. *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Where the tip is from an anonymous caller, the tip, standing alone, will rarely provide the reasonable suspicion necessary for an investigative stop. *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301. However, if corroborated by independent police work, that tip may be a sufficient basis for the stop. *Id.* In contrast, where a tip is received from a known informant and the details of the tip are easily verifiable, that tip has greater indicia of reliability. *Adams, supra.* Regardless of whether the informant is known or anonymous, each case must be evaluated under the totality of the circumstances.

In this case, the arresting officer relied solely on information relayed to him from the radio dispatch, which, in turn, was based on information from an unverified cellular telephone caller. The majority justifies the stop by holding that the tip was reliable because it was made by a citizen-informant who identified himself sufficiently to police, personally observed erratic driving, and then relayed the information to police as it was happening. The majority further concludes that the tip was reliable because it can be inferred that the informant had a strong

19

motivation to report the erratic driving, *i.e.,* to promote the safety of the roadway. From these facts, the majority concludes that the informant's tip was highly credible and can withstand scrutiny under the Fourth Amendment.

The fact that the informant provided the dispatching officer with his name and phone number and a brief description of the vehicle and its location does not, in and of itself, make him a reliable source of information. See *State v. Ramsey* (Sept. 20, 1990), Franklin App. Nos. 89AP-1298 and 89AP-1299, unreported, 1990 WL 135867. In fact, since the caller's identity was never verified, the informant is more akin to an anonymous caller. As aptly noted by the Washington Supreme Court, "[t]he reliability of an anonymous telephone informant is not significantly different from the reliability of a named but unknown telephone informant. Such an informant could easily fabricate an alias, and thereby remain, like an anonymous informant, unidentifiable." *State v. Sieler* (1980), 95 Wash.2d 43, 48, 621 P.2d 1272, 1275. It is therefore illogical to presume that an unverified citizen's report of erratic driving is inherently reliable. Cf. *United States v. Pasquarille* (C.A.6, 1994), 20 F.3d 682, 689. Nor should the supposed motivation behind an informant's tip be used to test the reliability of the tip, particularly where the informant was never contacted by the arresting officer or called to the witness stand to explain his reasons for providing police with this information.

20

Had the veracity and reliability of the informant's tip been corroborated, or had the officer followed appellee for a longer time and himself witnessed erratic driving, then there would indeed have been sufficient indicia of reliability to make the stop. However, that was not done. Instead, the officer who made the stop relied solely on the dispatch report and then followed appellee's car for approximately thirty to forty seconds. In that short time, the officer admits, he did not observe any weaving or any other erratic driving to lead him to believe that appellee was committing a crime. Nevertheless, he stopped appellee's vehicle.

Under the totality of the circumstances, I believe that the arresting officer lacked reasonable and articulable suspicion to stop appellee's vehicle, and consequently violated appellee's constitutional rights. Since I believe that the police lacked justification to stop appellee's vehicle, in my opinion appellee's Fourth Amendment rights were violated. Accordingly, I would affirm the judgment of the court of appeals.

MOYER, C.J., and BOWMAN, J., concur in the foregoing dissenting opinion.