OPINION
Defendant-appellant Mark Phillips appeals from his conviction and sentence, following a no-contest plea, for Driving Under the Influence. Phillips contends that the trial court erred when it denied his motion to suppress, because the police officer who stopped him had no reasonable, articulable suspicion justifying a stop. We conclude, from the totality of circumstances, which includes a report by an identified witness that Phillips appeared intoxicated, as well as the police officer's own observations of erratic driving and, earlier, of the defendant, that the officer had a reasonable and articulable suspicion justifying a stop. Accordingly, the judgment of the trial court is Affirmed.
 I
One evening in early September, 2000, at about 6:00 p.m., Beavercreek Police Officer Matt Barber was called to a car wash. Barber spoke to the car wash manager, who reported that a person he thought was intoxicated had picked up his car, after it was washed, and that he, the manager, thought this person might have parked his car at Wallaby's. The manager described the car as a red Camaro with a raised spoiler in back. Barber saw a red Camaro with a raised spoiler in the parking lot at Wallaby's. Barber drove over to Wallaby's, and ran the license plate. It came back to Phillips.
Barber and his trainee then left that parking lot, parked nearby, and began completing miscellaneous paperwork. Soon after, they were dispatched to Wallaby's on the report of an intoxicated person. The manager of that establishment pointed out a "barely conscious" person. This person was not Phillips, but was in Phillips' party. Barber then made contact with Phillips:
 Q. So when you went to make contact, you observed the identified [sic] as Mr. Phillips?
 A. I saw Mr. Phillips, who fit the description of what the manager had given, wearing a green shirt, blue jeans. I made contact with him at that point.
 Q. When you made contact with him, what observations did you note?
 A. I could see that his eyes were glassy. And I could smell an odor of alcoholic beverage from across the table. I was standing across the table from him.
 Q. Did you speak to him? Did he speak back to you?
 A. Yes. I informed him of the situation at the Auto Butler, that we received a call and what that call was. And based on the call and what I had noticed about him, that he should not be out driving until he had a chance to sober up or otherwise.
 Q. When you made your contact with Mr. Phillips, was he standing at that time?
A. No. He was sitting at a table.
 Q. So you didn't have a chance to observe him standing?
A. No, not at that point.
Q. You did observe his speech?
A. Yes. I spoke with him.
 Q. Did you notice anything about his speech when you spoke to him?
A. It was slurred somewhat.
 Barber and his trainee then dealt with the intoxicated patron, but remained in a parking lot in the area, where they could see the parking lot of Wallaby's. They received a radio dispatch advising them that Phillips, according to the manager of Wallaby's, was getting ready to leave. They saw the red Camaro pulling out of its parking spot. What happened thereafter was described by Barber as follows:
 Q. After you observed the car pulling out of Wallaby's, did you make any other observations of the car?
 A. Yes. As it drove past us where we were sitting, I saw that Mr. Phillips was the driver. At that point, it appeared as if he was the only occupant of the vehicle.
 Q. At that time, did you begin to monitor the driving?
 A. Yes. Officer Molnar, my trainee, pulled out of the parking lot and fell in behind Mr. Phillips. Mr. Phillips stopped at the stop sign at Esquire and Lakeview and made a left-hand turn and proceeded eastbound on Lakeview to the stop light at North Fairfield Road. He came to a stop. He stopped well past the stop bar, the marked stop bar. He then made a right-hand turn onto southbound North Fairfield Road. Instead of turning from the right-hand curb lane he was in on Lakeview, to the right-hand curb lane on North Fairfield Road, he turned wide and turned into the left-hand travel lane.
 Q. Is this a violation of law, to make a turn? When you are making a right turn, is there any specific way that you are supposed to make your turn?
 A. Yes. When you make a right-hand turn, you are supposed to turn from curb lane to curb lane. It is a marked lanes violation.
 Q. And as far as the stopping at the intersection, was that unusual?
 A. Yes. You are supposed to line up your front bumper with the stop bar at a stop light, not your rear bumper.
 Q. And after he made the turn onto North Fairfield, did you observe anything else unusual about his driving?
 A. Yes. We made a right-hand turn as well. Once we got directly behind him, he weaved from side to side in his travel lane, and, at one point, he crossed the yellow line with his left side tires. Then he got into the left-hand turn lane at the intersection of North Fairfield and Kemp Road and made a left-hand turn onto eastbound Kemp Road. Once again, instead of turning into the left lane, he turned wide into the right-hand lane, and then he turned immediately into the parking lot of the Speedway station that is right there at the southeast corner of the intersection.
 Q. When he was driving on Fairfield and you say weaving, he went across the center line?
A. Yes, the left-hand yellow line.
 Q. Did he signal that he was going to be doing that?
A. No, not that I recall.
 Q. When he made a left turn, did he signal to turn?
A. I believe he did signal the turn.
 Q. After he turned left and then turned right into the Speedway lot, did he signal that turn?
A. I believe so.
 Q. And based on your observations of his driving to that point and your prior face to face observations of him earlier, did you elect to make a stop at that time?
 A. Yes. I had Officer Molnar turn on our overhead lights and pull in behind Mr. Phillips where he stopped in the parking lot.
 After Phillips exited his car, the situation deteriorated rapidly from Phillips' viewpoint. Field sobriety tests were performed, and Phillips was ultimately charged with DUI.
Phillips filed a motion to suppress, asserting many different grounds. Among these grounds was his contention that the police officers lacked a basis for stopping him. This is the sole issue raised on appeal.
Following a hearing, Phillips' motion to suppress was denied. Thereafter, he pled no contest to DUI, was found guilty, and was sentenced accordingly. From his conviction and sentence for DUI, Phillips appeals.
 II
Phillips' sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO PROVE THAT THE OFFICER STOPPED THE CAR BASED ON A REASONABLE SUSPICION THAT THE DRIVER HAD COMMITTED A TRAFFIC OFFENSE.
 Phillips is only challenging the propriety of the stop. He points out that not every crossing of the center line is unlawful — that under R.C. 4511.33(A), the State must show either that it was not practicable for the driver to remain within the lane of traffic, or that the driver crossed the line without first determining that it was safe to do so.
In our view, it is unnecessary to determine whether the police had a sufficient basis to stop Phillips for a traffic violation other than DUI. The propriety of a traffic stop must be determined from the totality of the circumstances confronting the officer. Maumee v. Weisner
(1999), 87 Ohio St.3d 295, 299, 302. In the case before us, Barber had received a report from the manager of the car wash that Phillips appeared intoxicated. The manager of the car wash was both an identified person, and a person who apparently had an opportunity to observe Phillips' demeanor. In addition, Barber had his own observation of Phillips, a little bit later, at Wallaby's, where he detected glassy eyes, slurred speech, and the odor of alcohol. Finally, he observed somewhat erratic driving. This included stopping well past a marked stop bar, weaving within a lane of travel, two wide turns, and a crossing of the yellow center line. We are satisfied that the combination of all of these circumstances gave rise to a reasonable, articulable suspicion that Phillips was driving while under the influence of alcohol.
Phillips' sole assignment of error is overruled.
 III
Phillips' sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.