OPINION
{¶ 1} Lachaunse Dickerson pleaded no contest to carrying a concealed weapon and was found guilty. He was sentenced to Community Control Sanctions and his driving privileges were suspended. His single assignment of error and issue for review are stated as follows:
 ASSIGNMENT OF ERROR {¶ 2} "The trial court erred by overruling appellant's motion to suppress the evidence derived from the illegal police search and seizure of his person.
 {¶ 3} "Issue presented:
 {¶ 4} "Did police have sufficient `reasonable suspicion' of criminal activity to justify stopping and detaining Mr. Dickerson when the total information they had was a general description of two individuals at a bus stop selling drugs and they observed no activity indicating drug sales when going to the location."
 {¶ 5} Dayton Police Officer Moebius was the sole witness at the suppression hearing. He testified that around 9 a.m. on August 19, 2001, he and his partner were on routine patrol in their cruiser when they received a dispatch as follows. A caller to the police, who furnished her name, "said the individuals were selling drugs at that location, at the bus stop at the corner of West Riverview and North Broadway. She stated that they were — they had a football and were playing in the street and one had on a pair of blue shoes and one had a pair of white shoes." (Transcript, pp. 7-8)
 {¶ 6} The officers proceeded to the intersection of West Riverview and North Broadway where they observed individuals who fit the caller's description. Officer Moebius observed one individual, Dickerson, sitting on the back support of the bench at the bus stop with his feet on the seat. Dickerson's shirt was not tucked in and Officer Moebius observed a bulge under the shirt "[i]n his back, left side of his back."
 {¶ 7} After observing the bulge, the officers called for a backup crew. After the backup crew arrived, Officer Moebius and his partner approached Dickerson and Officer Moebius asked him "what he had in his back." When Dickerson did not answer, Moebius "grabbed" the bulge and immediately felt a handgun. The officers disarmed Dickerson and placed him in handcuffs.
 {¶ 8} Officer Moebius testified that he and his partner observed no drug dealing by Dickerson and the other two individuals with him. He testified that the police daily receive numerous citizen complaints about drug dealing in the area of this intersection and that he has made numerous drug arrests in that area.
 {¶ 9} As to why he approached Dickerson, Officer Moebius testified on direct and cross as follows:
 {¶ 10} (Direct):
 {¶ 11} "Q. Why did you approach the individual and ask him what was in his back pocket?
 {¶ 12} "A. For officer safety. When we first pulled up, I had told my partner — I immediately told him as soon as I saw it, that there was a large bulge in the — in the back area that could possibly be a gun. And we were in a drug area and we had a drug — drug complaint called." (Transcript p. 13)
 {¶ 13} (Cross):
 {¶ 14} "Q. Okay. And from here [40-50 feet from Dickerson] is where you observed some sort of bulge in his left back area?
 {¶ 15} "A. Yes.
 {¶ 16} "Q. At this point you don't know what the bulge is, though, do you?
 {¶ 17} "A. Just what I suspected." (Transcript p. 22).
 {¶ 18} (Redirect):
 {¶ 19} "Q. Now, let's make sure the record is clear. What was your intention? What were you intending to do when you went — when you approached this individual?
 {¶ 20} "A. To find out what the bulge in the back area of his pants was.
 {¶ 21} "Q. Right. And what about the investigation of the complaint?
 {¶ 22} "A. And then — well, that was another point, to figure out if they were selling drugs, if they were doing illegal activity and — and at that specific point when we first walked up, my first priority was for officer safety to see what the bulge was first." (Transcript, p. 25-26).
 {¶ 23} (Recross):
 {¶ 24} "Q. Until you grab the gun, you didn't know what it was, did you?
 {¶ 25} "A. I — only what I would suspect.
 {¶ 26} "Q. Okay. Just a hunch?
 {¶ 27} "A. Yes." (Transcript, p. 26).
 {¶ 28} The question before us is whether Officer Moebius demonstrated a reasonable articulable suspicion that Dickerson was engaged in criminal activity so as to justify what can fairly be described as an investigative detention and pat-down.
 {¶ 29} The parties expend considerable energy in their briefs discussing whether the person who called the police, and furnished her name but nothing more, should be classified as an "anonymous informant," whose information is generally regarded as comparatively unreliable, or an "identified citizen informant," whose information is generally accorded greater reliability. See Maumee v. Weisner, 87 Ohio St.3d 295,1999-Ohio-68.
 {¶ 30} The trial court determined the caller to be an identified citizen informant. If that be so, our caller furnished considerably less in the way of identification than did the informant in Weisner, who furnished his cellular and home phone numbers in addition to his name.
 {¶ 31} We would be far more concerned with pigeon holing the caller in this case as anonymous or identified if the contraband seized by Officer Moebius was drugs and the seizure was based solely on the information from the dispatcher. (The traffic stop in Weisner was based solely on the information contained in the dispatch, which was furnished by the informant.)
 {¶ 32} Here, Officer Moebius' primary concern was that Dickerson had a gun concealed in his clothing, which in itself may constitute criminal conduct.
 {¶ 33} Thus, the question is whether Officer Moebius had a reasonable, articulable suspicion that Dickerson was concealing a weapon on his person.
 {¶ 34} The information contained in the dispatch furnished the reason for Officer Moebius to be at the intersection of West Riverview and North Broadway observing Dickerson and his two companions. Although the fact that these individuals matched the caller's description may not have been sufficient to justify an investigative detention, it was certainly entitled to consideration as part of the totality of circumstances that courts consider in determining the existence of a reasonable, articulable suspicion. Furthermore, Officer Moebius had personal knowledge that the intersection is an area where drug dealing is prevalent. He observed a bulge under Dickerson's shirt. It is well known that guns are common in the drug trade. Before he touched Dickerson's person, Officer Moebius had asked Dickerson about the bulge and Dickerson had failed to answer him.
 {¶ 35} In our judgment, the facts support a determination that Officer Moebius had a reasonable, articulable suspicion — not merely a hunch — that Dickerson was concealing a weapon on his person. The investigative detention and pat-down search were thus justified.
 {¶ 36} The assignment of error is overruled.
 {¶ 37} The judgment will be affirmed.
BROGAN, J. and GRADY, J., concur.