[Cite as *State v. Ryan*, 2011-Ohio-1616.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24026 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-4251 |
| v. | : | |
| | : | (Criminal Appeal from |
| BRYAN K. RYAN | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of April, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LAURA M. WOODRUFF, Atty. Reg. #0084161, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
　　　　Attorney for Plaintiff-Appellee

TINA M. McFALL, Atty. Reg. #0082586, 117 South Main Street, Suite 400, Dayton, Ohio 45422
　　　　Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Bryan Ryan appeals from his conviction and sentence on a charge of Carrying Concealed Weapons in violation of R.C. 2923.12(A)(2). Ryan contends

that the trial court erred in overruling his motion to suppress, because the police did not have a reasonable articulable suspicion that Ryan was armed and presently dangerous when an officer decided to conduct a warrantless search of Ryan's person.

{¶ 2} We conclude that the trial court did not err in overruling the motion to suppress. The trial court's decision is supported by competent, credible evidence, which indicates that the police officer had reasonable articulable suspicion for the warrantless search. Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 3} The applicable facts in the case before us are undisputed, because the police officer who conducted the warrantless search was the only witness at the suppression hearing. The search occurred at Children's Medical Center in Dayton, Ohio, in December 2009, and was conducted by Officer Michael Wherry, who was a certified police officer. Wherry had all the rights and privileges of a City of Dayton Police Officer, except that his jurisdiction was limited to the hospital premises.

{¶ 4} On the evening in question, Ryan made the first contact with Wherry, while both men were in the triage waiting room. As Wherry walked by, Ryan asked him if officers carried pistols in the hospital. Wherry did not carry a firearm, because CMC does not allow firearms in the hospital. Wherry was wearing a duty belt, and was equipped with pepper spray, handcuffs, and a radio. Wherry told Ryan that they [the firearms] could not be seen. Ryan then asked, "So do you guys carry?" Wherry did not answer the question, and walked away. Wherry decided to watch Ryan, because he was acting suspicious. During their conversation, Ryan had been looking Wherry up and down to see what kind of equipment

Wherry was carrying, and this made Wherry uncomfortable.

{¶ 5}  Ryan stayed in the waiting area for a little while, and then left the property. About thirty or forty minutes later, Ryan came back into the hospital, carrying a fairly large wooden box in his hands.  The box was a foot and a half or two feet long, and was about a foot deep.  Although people do carry things into the hospital, it is unusual for people to carry old wooden boxes inside.  This drew Wherry's attention.

{¶ 6}  After Ryan passed through, Wherry asked the nursing staff for the room number where Ryan had been headed.  The nursing staff was also concerned about what Ryan was carrying, and asked Wherry if he knew what was in the box.  Wherry told the staff that he was about to find out.

{¶ 7}  When Wherry arrived at the location where Ryan had headed, he was greeted by other members of the nursing staff, who said that a male had just come in, carrying a box, and that he was acting strangely.  The door of the room where Ryan had gone was shut. When Wherry knocked on the door, he was told to enter.

{¶ 8}  Ryan was in the middle of the room, by the bed.  The wooden box was on the floor, by the front counter.  Wherry asked Ryan what was in the box, and was told that it contained silverware.  Ryan attempted to come up to the front of the room, but Wherry told him to stay put.  Wherry then opened the box, and found that it did, indeed, contain silverware.  After Wherry inquired why Ryan brought the silverware to the hospital, Ryan stated that he had gotten the silverware for a Christmas dinner and was leaving it with his wife or significant other.  Wherry was not concerned about the silverware, but it was odd.

{¶ 9}  During the time that Wherry was speaking to Ryan about the box, Ryan went to

the back of the room. Ryan would not look Wherry in the eyes, and at one point, was up against a wall with his chest facing the wall, looking over his shoulder to talk with Wherry. Ryan kept messing with the left side of his jacket, and grabbed the left side of the jacket at least three times. At one point, Ryan bent down and messed with the left side of the jacket, as if he were pushing something back up. Ryan's behavior raised flags in Wherry's mind, based on his nine-year experience as a police officer. Ryan's behavior made Wherry believe that he was hiding something or perhaps carrying a weapon. Wherry was uncomfortable and was worried about the safety of the sixty to a hundred people who were in the emergency room at that point.

{¶ 10} When Wherry said he would like to talk to Ryan, Ryan said that he was leaving the hospital. Wherry told Ryan that he would escort him out. As the two men walked out, Ryan again reached into his jacket pocket, and Wherry asked him to keep his hands in plain view. Ryan stated that he was reaching for his gloves. Ryan already had on gloves, however, so that was a key indicator to Wherry. Ryan reached into his jacket a second time, and Wherry again asked Ryan not to put his hands in his jacket and to keep them where Wherry could see them. Ryan again stated that he just wanted to get his gloves, and felt his jacket once more.

{¶ 11} At this point, Wherry separated Ryan from the emergency room and triage area, and went into a separate room. Wherry told Ryan that he was going to conduct a pat-down for the safety of himself and others, because he was getting very nervous about Ryan. After being instructed to put his hands on the small table, Ryan complied. However, when Wherry went to pat Ryan down, Ryan pulled away and reached for his left side. Wherry then felt the

butt of a weapon in Ryan's jacket.  At that point, Wherry's backup officer had come in.  Wherry yelled out, and the officers took Ryan to the ground, securing the weapon.   When the weapon was removed, the officers found that it was loaded.

{¶ 12} Ryan was subsequently indicted on charges of Carrying Concealed Weapons and Using Weapons While Intoxicated.  After Ryan's motion to suppress was overruled, Ryan pled no contest to Carrying Concealed Weapons, and was sentenced to eight months in prison.   Ryan appeals from his conviction and sentence.

II

{¶ 13} Ryan's sole assignment of error is as follows:

{¶ 14} "THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS BY FINDING THE OFFICER HAD REASONABLE ARTICULABLE SUSPICION THAT MR. RYAN WAS ARMED AND DANGEROUS TO PERMIT A *TERRY* PAT DOWN."

{¶ 15} Under this assignment of error, Ryan contends that the trial court erred in overruling his motion to suppress.  Ryan argues that under the totality of the circumstances, Officer Wherry did not have a reasonable articulable suspicion that Ryan was armed and dangerous.  Ryan maintains that at the time of the pat-down, Wherry had a hunch that Ryan was hiding something, but had no facts or accumulation of facts to suggest that Ryan was armed and presently dangerous.

{¶ 16} The standards for reviewing decisions on motions to suppress are well established.   In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the

credibility of the witnesses." *State v. Retherford* (1994), 93 Ohio App.3d 586, 592 (citation omitted). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.

{¶ 17} Under the applicable law:

{¶ 18} "The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. Unless an exception applies, warrantless searches are per se unreasonable. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. One exception was announced by the United States Supreme Court in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, in which the court held that a brief investigative stop of a person does not violate the Fourth Amendment if the police have reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity. Additionally, the court balanced the right to be free from unreasonable searches against the need to protect the police and the public, and held that a police officer may frisk a detainee's outer clothing for concealed weapons when the officer has a reasonable suspicion that the suspect is armed and dangerous. Id., 392 U.S. at 27. Analyzing whether the police had reasonable suspicion in any given situation requires us to review the 'totality of the circumstances.' *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507, citing *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621." *State v. Cisternino*, Cuyahoga App. No. 94674, 2010-Ohio-6027, ¶ 12.

{¶ 19} "The burden of initially establishing whether a search or seizure was authorized

by a warrant is on the party challenging the legality of the search or seizure. * * * Once a warrantless search is established, the burden of persuasion is on the state to show the validity of the search. * * * This flows from the presumption that searches conducted outside the judicial process, without prior approval by judge or magistrate, are 'per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions.' " *City of Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218.

{¶ 20} In the case before us, the State met the burden of establishing that the search was valid. As the trial court noted, Officer Wherry found several key indicators that Ryan was involved in criminal activity. Ryan's initial inquiry about whether Wherry was armed was unusual; in fact, Wherry had never been asked that question during his employment as an officer at the hospital. Ryan also kept his left side hidden from Wherry during their initial encounter, and appeared to be surveying what type of equipment Wherry carried. When Wherry was in the hospital room investigating the box that Ryan had been carrying, Ryan reached into or touched the left side of his jacket several times, which made Wherry believe that Ryan was hiding something or carrying a weapon.

{¶ 21} Wherry testified that people under stress in the hospital do sometimes behave oddly, but not in the way that Ryan did. Ryan did not display the concerned or frazzled demeanor that normal people do when a child is hurt. Instead, Ryan acted as if he were hiding something.

{¶ 22} Furthermore, when Wherry and Ryan left the hospital room, Ryan continued to reach into the left side of his jacket, even when instructed not to do so on more than one occasion. Ryan's explanation that he was getting his gloves was not credible, because Ryan

was already wearing work gloves. Even though the tips of the work gloves were open, putting another pair of gloves on over the first pair seemed impractical. Ryan's continued action of reaching into his jacket is also suspicious, because Wherry had twice told Ryan to keep his hands in plain view.

{¶ 23} Under the totality of the circumstances, Officer Wherry had a reasonable suspicion to believe that Ryan was armed and dangerous. Accordingly, the trial court did not err in overruling Ryan's motion to suppress.

{¶ 24} Ryan's sole assignment of error is overruled.


III

{¶ 25} Ryan's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.


Copies mailed to:

Mathias H. Heck
Laura M. Woodruff
Tina M. McFall
Hon. Barbara P. Gorman, Administrative Judge