[Cite as *State v. Dixon*, 2019-Ohio-231.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27792 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-539 |
| | : | |
| DEANDRE D. DIXON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 25th day of January, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 W. Monument Avenue, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Deandre Dixon appeals from his conviction and sentence on one count murder, two counts of having a weapon while under disability, and accompanying firearm and repeat-violent-offender specifications.[1]

{¶ 2} Dixon advances three assignments of error. First, he alleges ineffective assistance of trial counsel based on his attorney's failure to provide advance notice of intent to use other-acts evidence under Evid.R. 404(B). Second, he contends the trial court erred in denying a motion to suppress evidence obtained pursuant to an allegedly deficient search warrant affidavit. Third, he claims his convictions were against the manifest weight of the evidence presented at trial.

{¶ 3} The present appeal stems from the shooting death of Gregory Moses on the night of December 2, 2016. At the time of his death, Moses was involved in a romantic but volatile relationship with a woman named Michelle Edwards. They were living together, and they fought and argued regularly. While still residing with Moses, Edwards met appellant Dixon in November 2016. Edwards and Dixon began dating and became intimately involved.

{¶ 4} On December 1, 2016, Edwards spent the night with Dixon at his mother's house. The following morning, Dixon dropped Edwards off down the street from Moses' house. She walked to the house and found her clothes and other belongings outside. Edwards confronted Moses, who brought the items back inside. Later that day, Dixon called Edwards while she was at Moses' house. Edwards told Dixon that she loved him.

---

[1] Dixon also was found guilty of other offenses that were merged into those set forth above for sentencing.

Moses responded by telling Edwards to "get the F out." He threw her belongings outside again and poured bleach on them.

{¶ 5} That evening, Edwards went out drinking with her sister, Quayshawn. While at a nightclub, she spoke to Dixon on her cell phone shortly after 10:00 p.m. She mentioned her belongings being put outside earlier in the day but told Dixon that she still loved Moses. Dixon responded by cursing and threatening to kill Moses. Edwards did not take the threat seriously. Shortly after Edwards finished speaking to Dixon, his cell phone began "pinging" off of cell towers as it moved north away from his mother's house and toward Dixon's home. Twenty-five minutes later, Dixon's cell phone "pinged" off of the cell tower that serviced Moses' home. Edwards then spoke to Dixon again around 11:30 p.m. He told her he had taken care of everything.

{¶ 6} Moses' friend Anthony Ivery called Moses around 11:37 p.m., but the call went to voicemail. Ivery then drove to Moses' house so the two men could go out together. When he arrived, Ivery saw that the front door was open and there were several bullet holes in the glass screen door. Ivery found Moses' body on the floor inside the door. Moses had been shot in the shoulder and the head. Police identified Dixon as a suspect several hours later. Dixon fled on foot when police arrived at his mother's house to arrest him. As he ran, he dropped a bag containing two .38 caliber revolvers and several rounds of ammunition. A forensic firearms examiner determined that one of the revolvers was the weapon that fired a bullet recovered from the back of Moses' skull.

{¶ 7} Based on the evidence presented, a jury found Dixon guilty on a number of charges and specifications, including murder. The trial court separately found him guilty on two counts of having a weapon while under disability and on firearm and repeat-violent-

offender specifications. After merging allied offenses, the trial court imposed an aggregate sentence of 27 years to life in prison. This appeal followed.

{¶ 8} In his first assignment of error, Dixon alleges ineffective assistance of trial counsel. He contends his attorney provided deficient representation by failing to give timely notice of intent to introduce other-acts evidence under Evid.R. 404(B).

{¶ 9} The record reflects that Dixon wanted to cross examine Edwards about information contained in police reports involving four prior incidents between herself and Moses. (Trial Tr. Vol. I at 213-216).[2] These incidents occurred in April 2014, June 2014, and May 2015. One of them involved Moses throwing Edwards' belongings out of their apartment. Another involved Edwards threatening Moses with a knife. Defense counsel argued that these incidents demonstrated the volatile nature of their relationship and that the information was relevant to Edwards' credibility and reliability. (*Id.*). The State objected on two grounds: (1) Evid.R. 404(B) requires the proponent of other-acts evidence to give reasonable advance notice unless excused for good cause and (2) the proposed evidence was not relevant to what happened on December 2, 2016. (*Id.* at 215-216). After considering the parties' arguments, the trial court sustained the State's objection on the grounds that the "police reports are too far removed and do not comply with the rules." (Trial Tr. Vol. II at 222).

---

[2] The record contains two sets of transcripts, one filed December 12, 2017 and one filed March 12, 2018. After the December 12th filing, Appellant's counsel filed a motion to supplement the record because a portion of voir dire and exercise of juror challenges was not included. The entire set of transcripts, including the missing parts, were refiled March 12th. Because these volumes contain additional material, the pagination of the material following voir dire has changed. The version of the transcripts available online on the clerk's website is the December 12, 2017 filing. But because it is the more complete set, we refer to the page numbers where material appears in the March 12, 2018 set of transcripts.

{¶ 10} Upon review, we see no error in the trial court's ruling and no ineffective assistance of counsel. In our view the trial court's statement that the police reports were "too far removed" appears to be a finding that those prior incidents were not sufficiently relevant to the issues in this case. That being so, even if defense counsel had provided advance notice of the other-acts evidence he wanted to introduce, the trial court still would have excluded it for lack of relevance. Thus, Dixon cannot establish prejudice from counsel's failure to bring the police reports to the trial court's attention sooner.

{¶ 11} We also see no abuse of discretion in the trial court's determination that the proposed evidence was "too far removed" from the issues in this case to be admissible. Dixon contends on appeal that the four prior incidents were relevant to Edwards' credibility and her motive for incriminating him. But these prior incidents occurred between one and one-half and two and one-half years before the events in this case. The trial court reasonably could have concluded that this distant evidence had little bearing on Edwards' credibility as a witness or her motive for testifying against Dixon. Moreover, in conjunction with the ruling about the prior reports, the court also ruled that defense counsel *could* inquire of Edwards whether she was initially considered a suspect and was Mirandized by police in their initial contact. We note too that defense counsel did cross examine Edwards about more recent arguments and "violent talk" involving her and Moses in November and December 2016. (*Id.* at 229-230). This evidence included a threat by Edwards to have her brothers "F up" Moses. (*Id.* at 230).

{¶ 12} In short, because the trial court acted within its discretion in excluding the proposed other-acts evidence on relevance grounds, and permitted other evidence about the volatile relationship and the suspicions about Edwards, Dixon was not prejudiced by

his attorney's failure to bring the Evid.R. 404(B) evidence to the trial court's attention sooner. Accordingly, his ineffective-assistance claim fails. The first assignment of error is overruled.

{¶ 13} In his second assignment of error, Dixon challenges the trial court's denial of a pre-trial suppression motion. He contends a search warrant affidavit was defective because it was based on information supplied by Edwards, who was not shown to be a reliable source.

{¶ 14} The record reflects that police actually obtained four search warrants in this case.[3] Although the supporting affidavits contained some differing information, each affidavit contained the same facts obtained from Edwards. As noted by the trial court in its written decision (Doc. #44), each affidavit included the following averments by Detective Walter Steele:

On 12/2/16 (Fri) at approximately 2348 hours, Harrison Twp. Deputies were dispatched to 3733 Haney Rd. in Harrison Township reference to an unresponsive male. Upon arrival, Deputies located a black male, later identified as Gregory Moses, deceased just inside the door of the residence. Moses had been shot in his body succumbing to his injuries from apparent gunshot wounds.

There were at least 5 bullet holes in the front "storm" door appearing the suspect fired from outside striking the victim while he was still inside the residence. There were no casings found at the scene. The residence was

---

[3] One search warrant pertained to Dixon's residence and vehicle. The others pertained to his DNA, his cell phone, and cell phone records.

processed by E.V. and Moses' body was removed by the coroner's office.

Detectives shortly later located Moses' girlfriend Michelle Edwards and interviewed her at Special Investigations. Edwards relayed she had been at 2 bars throughout the evening and had conversations over the phone with a subject identified as Deandre Dixon who she had current intimate relations with. Dixon was angry over a rocky relationship that Edwards had with Moses.

Edwards stated that she felt that Dixon was responsible for Moses' murder due to Dixon telling her over the phone shortly before the murder, "I'll kill his lame ass." Edwards also stated that she again spoke with Dixon over the phone around the time of the murder and Dixon relayed to her, "I took care of everything." Edwards stated that she was unsure at the time what Dixon meant by this. She said during these conversations with Dixon, he appeared to be intoxicated and sounded angry. Edwards provided Dixons cell phone number of 937-[xxx]-6390.

Dixon's cell was "pinged" using exigent circumstances and he showed to be in the area of 425 N. Orchard Ave. in the city of Dayton. Edwards confirmed that this address is where Dixon had been staying. She further provided that Dixon drove a black Tahoe. A black Tahoe bearing Ohio registration GSW2275 was located parked south of the residence.

(Doc. #44 at 2).

{¶ 15} On appeal, Dixon's entire substantive argument is as follows:

* * * The only information provided by Ms. Edwards that was

confirmed was Mr. Dixon's location and the model of vehicle that he drove. The information did not relate to the likelihood of criminal activity.

Detective Steele essentially made the determination regarding whether probable cause existed to issue a warrant because no information was included in the affidavit to support the credibility of the information.

Therefore, the Court erred in overruling Mr. Dixon's Motion to Suppress because there was not probable cause to issue a warrant.

(Appellant's brief at 21).

{¶ 16} Because Dixon only challenges Steele's affidavit on the basis that it did not attest to or demonstrate Edwards' credibility or reliability, we will confine our analysis to that issue.[4] In its ruling, the trial court concluded that Edwards "was an 'identified citizen informant' and sufficiently reliable to support the issuing judge's probable cause determination." (Doc. #44 at 2). We agree with this determination.

{¶ 17} Unlike an anonymous source or an unnamed confidential informant, Edwards was named and identified in the search warrant affidavit. It is well settled that information supplied by an "identified citizen informant" is treated as being more reliable than information obtained from other types of informants and may be presumed reliable, particularly where the citizen provides her basis of knowledge. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300-301, 720 N.E.2d 507 (1999); *see also State v. Garner*, 74 Ohio St.3d

---

[4] The trial court noted that three of the four search warrant affidavits contained additional information supporting a finding of probable cause. This information included, inter alia, Dixon leaving his residence and running from police, dumping a bag containing two guns and ammunition, and being in possession of the cell phone that was "pinged." For purposes of our analysis, however, we will focus on the information police obtained from Edwards and her reliability, which is the subject of Dixon's assignment of error.

49, 63, 656 N.E.2d 623 (1995) ("Information coming from a citizen eyewitness is presumed credible and reliable, and supplies a basis for a finding of probable cause in compliance with") *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 18} Here police themselves initiated contact with Edwards, who told them about her conversations with Dixon and provided her basis of knowledge. She also explained the nature of her relationship with Dixon, gave police his cell phone number, and told them where he lived and what vehicle he drove. Under the totality of the circumstances, the information Edwards provided was sufficiently reliable to support the issuance of a search warrant. Accordingly, the second assignment of error is overruled.

{¶ 19} In his third assignment of error, Dixon contends his convictions were against the manifest weight of the evidence.

{¶ 20} Dixon notes that there were no eyewitnesses to the shooting of Moses. He also asserts that cell phone "ping" data can be inaccurate. In addition, although bullets recovered from the crime scene were fired from one of the guns Dixon discarded, he contends there was no evidence that he possessed the gun when it was fired. Finally, Dixon notes that Edwards did not take his threat about killing Moses seriously and that Edwards' sister, Quayshawn, also made a death threat in a text message to Moses.

{¶ 21} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A

judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} With the foregoing standards in mind, we conclude that Dixon's convictions were not against the weight of the evidence. While it is true that no one saw Dixon kill Moses, a murder conviction may be based entirely on circumstantial evidence. *State v. Brown*, 2d Dist. Montgomery No. 27820, 2018-Ohio-4448, ¶ 23. Here the circumstantial evidence of Dixon's guilt was compelling. Edwards testified that Dixon threatened to kill Moses when she spoke to Dixon on the telephone. Records from Edwards' and Dixon's cell phones show that this conversation occurred around 10:22 p.m. Analysis of "ping" data showed Dixon's cell phone then moving from his mother's house toward Moses' residence. Shortly thereafter, Dixon's cell phone "pinged" off of the cell tower that serviced Moses' residence. Dixon's cell phone then began moving back toward his mother's house. Phone records showed calls between Edwards and Dixon during this time, and Edwards testified that he told her, "I have took [sic] care of everything." Anthony Ivery found Moses shot dead at around 11:49 p.m. A few hours later, Dixon ran and dropped a bag when police tried to arrest him. Inside the bag was a gun that a forensic expert testified had fired a bullet removed from Moses' skull.

{¶ 23} Despite the strong evidence of his guilt, Dixon notes that cell phone "ping" data can be inaccurate, a point that his counsel argued to the jury. He also notes that his possession of the murder weapon does not mean he necessarily was the killer. While this is true, it was reasonable for the jury to infer that Dixon was the killer based on all of the evidence presented. As for the threatening text message from Edwards' sister, cell phone

records corroborated testimony from Edwards and Quayshawn that they were together at a bar when Moses was shot. Therefore, the jury reasonably could have concluded that Quayshawn was not the killer despite her threat.

{¶ 24} We conclude that this is not an exceptional case in which the evidence weighs heavily against Dixon's convictions, and the jury did not clearly lose its way in finding him guilty. The third assignment of error is overruled.

{¶ 25} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck
Andrew T. French
Sean Brinkman
Hon. Gerald Parker