JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant, State of Ohio, appeals the decision of the Cuyahoga County Common Pleas Court that granted the motion to suppress evidence filed by defendant-appellee, Rodney E. Williams ("Williams"). For the reasons that follow, we affirm.
 {¶ 2} The record reveals that, on September 5, 2001, Sergeant Michael Seaborn received a telephone call from an anonymous informant detailing a series of drug transactions taking place at a residence on East 117th Street near Superior Avenue. According to the informant, an individual wearing a red jersey bearing the name "CAREW" and number "117" was selling what was believed to be drugs from two different vehicles located in the driveway of the residence. Sergeant Seaborn testified:
 {¶ 3} "I asked the person how they knew this and the party stated, I'm watching, I'm watching cars pull up. It is almost like a store. Cars pull up and stop. They call out the party's name, Carew. He talks to them. He walks a short distance from the street to one of two cars parked in the driveway. He retrieves objects. The party can see that it is — that it appears to be drugs."
 {¶ 4} The informant thereafter gave detailed information of the makes and models of the cars, including the license plate number of one vehicle. Sgt. Seaborn relayed this information to Sergeant Steven Loomis, who, in turn, dispatched Officers Kahlil Caldwell and Racso Davis from the Fresh Start[1] unit to the address given by the informant. As the officers approached the intersection of East 117th, they observed the individual matching the informant's description, later identified as Williams, in front of a supermarket-type store near the residence. The suspect went into the store and the officers followed. According to the officers' testimony, the officers informed Williams that they were investigating complaints of drug activity and asked Williams his name and address. When asked how he came to this part of the city, Williams pointed in the direction of the vehicles in the driveway. The officers asked to search the vehicles and, according to their testimony, Williams consented.
 {¶ 5} Williams was eventually charged with (1) two counts of preparation of drugs for sale, in violation of R.C. 2925.03; (2) two counts of possession of drugs, in violation of R.C. 2925.11; and (3) one count of possession of criminal tools, in violation of R.C. 2923.24. Williams moved to suppress the seizure of the drugs, arguing that the officers did not have a reasonable suspicion to investigate or detain him and that search of the vehicles was not consensual. The trial court eventually granted the motion.
 {¶ 6} The state is now before the court pursuant to Crim.R. 12(K) and assigns three errors for our review. We will discuss the assigned errors together because each challenges the propriety of the trial court's decision to suppress evidence.
 {¶ 7} A motion to suppress evidence seeks to challenge the arrest, search or seizure as somehow being in violation of theFourth Amendment of the United States Constitution. The principal remedy for such a violation is the exclusion of evidence from the criminal trial of the individual whose rights have been violated. See Katz, Ohio Arrest, Search and Seizure (2001) 31, Section 2.1. Exclusion is mandatory underMapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, when such evidence is obtained as a result of an illegal arrest, search or seizure. In reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings of fact "if they are supported by competent, credible evidence." State v. Retherford (1994),93 Ohio App.3d 586, 592. Accepting these facts as true, we must then independently determine, as a matter of law and without deference to the trial court's conclusion, whether these facts meet the applicable legal standard.[2] Id.
 {¶ 8} In Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889, 44 Ohio Op.2d 383, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause to arrest where the officer reasonably suspects that the individual is or has been involved in criminal activity. In reaching that conclusion, the officer must be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v.Andrews (1991), 57 Ohio St.3d 86, quoting State v. Terry,392 U.S. at 21.
 {¶ 9} Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. State v. Williams
(1990), 51 Ohio St.3d 58, 60. The propriety of an investigatory stop must be assessed in light of the totality of the circumstances as viewed through the eyes of a reasonable police officer who must confront those circumstances on the scene. State v. Andrews, 57 Ohio St.3d at 87-88.
 {¶ 10} Reasonable suspicion, however, need not be based only on an officer's personal observations. Adams v. Williams (1972), 407 U.S. 143,147, 92 S.Ct. 1921, 32 L.Ed.2d 612. The officer may rely on information gleaned from other valid sources, such as other officers or a police radio dispatch. United States v. Hensley (1985), 469 U.S. 221,105 S.Ct. 675, 83 L.Ed.2d 604. This principle is rooted in the notion that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." Id. at 231, 105 S.Ct. at 682,83 L.Ed.2d at 614, quoting United States v. Robinson (C.A.9, 1976), 536 F.2d 1298,1299. When a dispatch is involved, therefore, the officer who conducts the initial stop will typically have very little knowledge of the facts that prompted his or her fellow officer to issue the dispatch.
 {¶ 11} The United States Supreme Court has reasoned, then, that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers relying upon a dispatch "were themselves aware of the specific facts which led their colleagues to seek their assistance." It turns instead upon whether the officer who issued the dispatch possessed reasonable suspicion to make the stop. Id. at 231. Thus, if a dispatch was issued in the absence of reasonable suspicion, then a stop in the objective reliance upon it violates theFourth Amendment. Hensley, 469 U.S. at 232.
 {¶ 12} Relying on Hensley, the Ohio Supreme Court held that it is the state's responsibility at a suppression hearing to demonstrate that the facts precipitating a dispatch indicated a reasonable suspicion of criminal activity. Maumee v. Weisner (1999), 87 Ohio St.3d 295, 298. Where law enforcement officers rely solely upon an informant's tip before effectuating a stop, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip.Weisner, 87 Ohio St.3d at 298-299. It must be determined whether the tip itself is sufficiently reliable in order to justify the investigative stop.
 {¶ 13} In this regard, we find that there existed reasonable suspicion of criminal activity sufficient to issue the original dispatch. Reiterating, Sgt. Seaborn testified that he talked to the informant who relayed specific details about the clothing the suspect was wearing, the license plate number of one of the vehicles involved in the alleged illegal activity and, most importantly, a description of that activity as it was occurring. Nonetheless, that does not end our inquiry.
 {¶ 14} Because the "reasonable suspicion" needed to initiate aTerry stop is a less demanding standard than probable cause, reasonable suspicion "can arise from information that is less reliable than that required to show probable cause." Alabama v. White (1990), 496 U.S. 325,330. Thus, a tip from a less reliable informant can provide a sufficient basis for a Terry stop if the tip can be corroborated by independent police investigation. Id. at 329; see, also, State v. Welch (1985),18 Ohio St.3d 88, 91. However, the corroboration must demonstrate that the tip was "reliable in its assertion of illegality, not just its tendency to identify a determinate person." Florida v. J.L. (2000),529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254, 261.
 {¶ 15} Whether an anonymous tip can form the reasonable basis for an investigatory stop depends upon both the content of the information relayed to police and its degree of reliability. Alabama v. White,496 U.S. at 330. The United States Supreme Court noted in White that "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity * * * given that the veracity of persons supplying anonymous tips is `by hypothesis largely unknown, and unknowable.'" Id. at 329, quoting Illinois v. Gates (1983), 462 U.S. 213, 237,103 S.Ct. 2317, 76 L.Ed.2d 527.
 {¶ 16} In Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375,146 L.Ed.2d 254, the United States Supreme Court ruled that law enforcement officers lacked reasonable suspicion to search an individual when their suspicion was based solely on an anonymous tip that an individual matching the defendant's description and location was carrying a gun. Id. at 268. Unlike known or identified informants, anonymous informants, without more, cannot be deemed reliable regarding their allegations. Id. at 270. Unlike tips that predict future movements or indicate some inside knowledge of the criminal activity, mere descriptions of outwardly observable facts provide no indication of a "special familiarity" with the criminal behavior that suggests reliability. See, also, Alabama v.White, 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.
 {¶ 17} In this case, while en route to the scene of the alleged criminal activity, Officers Caldwell and Davis observed Williams in front of a supermarket-type store some distance away from the location given by the informant but in the attire described by that informant. Williams went into the store where he was confronted by the officers. The officers did not observe Williams act in a manner suggestive of illegal activity. On these facts, we cannot say that reasonable suspicion continued to exist sufficient to support any further detention of Williams. To be sure, the tip may have been sufficiently reliable in its assertion of illegality at the time that the tip was given, i.e. that drugs sales were being transacted from the vehicles parked at the residence. However, merely because the informant identified a determinate person with explicit detail does not justify the continued detention of Williams in the absence of any evidence to corroborate the information given by the informant or any other independent observation of suspected illegal activity. This is especially true in light of the fact that Williams was apprehended at a location other than the location given by the informant.
 {¶ 18} The police officers, nonetheless, persisted and testified that Williams consented to a search of the vehicles when asked. Williams was then patted down before being placed in the police vehicle. Although both officers testified that they did not recall whether they handcuffed Williams, at least one of the officers testified that it would not be unusual for them to do so according to police procedure. Several other witnesses, including Williams himself, testified that he was indeed handcuffed before being placed in the officers' vehicle. The officers then transported Williams to the address where the vehicles were located, conducted a warrantless search of the vehicles and thereupon found the contraband that served as the basis for the indictments at issue in this case.
 {¶ 19} A seizure occurs for purposes of the Fourth Amendment when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.United States v. Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1870,64 L.Ed.2d 497. "That generally occurs when a police officer has by physical force or show of authority restrained the person's liberty, so that a reasonable person would not feel free to decline the officer's requests or otherwise to terminate the encounter." State v. Gonsior (1996),117 Ohio App.3d 481, 485.
 {¶ 20} We are hard pressed to believe that any reasonable person would believe that he or she would be free to leave once a police officer pats down and places that individual in a police vehicle, handcuffed or unhandcuffed. Handcuffing that individual only exacerbates this belief. See State v. Nelson (1991), 72 Ohio App.3d 506, 509. Such an exhibition of police authority militates against any unspoken understanding that Williams was not under arrest and was free to leave at any time.
 {¶ 21} A warrantless Fourth Amendment seizure cannot be justified by facts acquired as a result of the intrusion involved. Smith v. Ohio
(1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464. We cannot condone the seizure of contraband obtained in violation of the protection afforded by the Fourth Amendment merely because it was contraband. The end result does not justify the means employed. If the United States Constitution is to mean anything at all, we must vigorously uphold the protection it affords — otherwise it is nothing more than a shallow document incapable of representing the values and freedoms so valiantly acquired.
 {¶ 22} Because we find that the search of the vehicles and seizure of the contraband offends the constitutional protection against unreasonable searches and seizures, it was not error for the trial court to grant the motion to suppress filed by Williams. Appellant's assignments of error are not well taken and, therefore, are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., concurs and concurs with separate concurring opinion.
SEAN C. GALLAGHER, J., concurs with separate concurring opinion(Concurring Opinion Attached).
[1] The Fresh Start unit investigates and tracks citizen complaints of drug activity and is funded, in part, by the federal government.
[2] Crim.R. 12(F) mandates that a trial court state its essential findings on the record when factual issues are involved in determining a motion to suppress. The failure of the trial court to issue such findings, however, is not prejudicial error where findings are not requested by a party and the record provides a reviewing court with a sufficient basis to review the assignments of error. State v. Benner
(1988), 40 Ohio St.3d 301, 317-318. Here, neither party requested findings of fact and conclusions of law although both parties did submit proposed findings and conclusions. Nonetheless, the record does not reveal that any part or all of either parties' proposed findings and conclusions were adopted by the trial court. Because we find that there exists a sufficient basis from which to review the state's assignments of error, we will conduct our review in the absence of the trial court's explicit findings.