DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, the State of Ohio, has appealed from a decision of the Cuyahoga Falls Municipal Court that granted Defendant-Appellee Timothy E. Dalchuk's motion to suppress. This Court reverses and remands.
 I {¶ 2} In the early morning of November 18, 2002, Appellee was detained by Cuyahoga Falls Police Officer Robert Schmidt after the officer observed Appellee speeding, weaving within his lane, and subsequently park at a closed business at 3:00 a.m. Upon stopping Appellee's vehicle, Officer Schmidt administered a breath-alcohol content ("BAC") test to Appellee, which resulted in a reading of over .172 grams of alcohol per 210 liters of breath. Appellee was charged with driving while under the influence, in violation of R.C. 4511.19(A)(1), and prohibited BAC, in violation of R.C. 4511.19(A)(6). As a result of the charges, Appellee's license was immediately suspended pursuant to R.C.4511.191.
 {¶ 3} On December 26, 2002, Appellee filed a motion to suppress, whereby he requested the trial court to suppress "any and all evidence obtained following the illegal stop" on the ground that "no specific and articulable facts existed to support an investigative stop of [Appellee's] vehicle on the night in question" nor was there "evidence from which to conclude that [Appellee] was involved in any type of illegal activity." A hearing on the motion was held on January 24, 2003, and the trial court granted Appellee's motion to suppress. As a result of the trial court's decision, on January 27, 2003, Appellee appealed his administrative license suspension to the Cuyahoga Falls Municipal Court. The trial court found in favor of Appellee, and dismissed the administrative license suspension on the ground that the Registrar committed error because the arresting officer did not have reasonable suspicion to stop or detain Appellee.[1]
 {¶ 4} The state has timely appealed the trial court's decision granting Appellee's motion to suppress, asserting one assignment of error.
 II Assignment of Error
"The Trial Court Erred In Determining That The State Lacked Reasonable Articulable Suspicion Justifying The Traffic Stop When The Arresting Officer Observed [Appellee] Commit The Traffic Violations Of Speeding And Weaving And [Appellee] Was Present At A Closed Business."
 {¶ 5} In the state's sole assignment of error, it has argued that the trial court erred in granting Appellee's motion to suppress. Specifically, the state has contended that the arresting officer had a reasonable suspicion, based on specific and articulable facts, that Appellee was engaged in criminal activity, and thus had reason to conduct a traffic stop of Appellee.
 {¶ 6} As an initial matter, we note that both R.C. 2945.67 and Crim.R. 12(K) establish the state's right to appeal from the granting of a pretrial motion to suppress. R.C. 2945.67(A) provides, in pertinent part: "A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case * * * which decision grants * * * a motion to suppress evidence * * *." Crim.R. 12(K) further provides that "[t]he appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion. Any appeal taken under this rule shall be prosecuted diligently." The state filed the instant appeal on January 31, 2003, seven days after the trial court granted Appellee's motion to suppress. As the appeal was timely filed, this Court may properly address the merits of the state's sole assignment of error.
 {¶ 7} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. In reviewing the trial court's findings of fact, an appellate court must give due weight to inferences drawn from those facts by the trial court because the trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Hopfer (1996), 112 Ohio App.3d 521,548, appeal not allowed (1996), 77 Ohio St.3d 1488. Accordingly, an appellate court reviews a trial court's findings of fact only for clear error. State v. Russell (1998), 127 Ohio App.3d 414, 416. A trial court's legal conclusions, however, are reviewed by an appellate court de novo. Id.
 {¶ 8} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. State v. Kinney (1998), 83 Ohio St.3d 85, 87, certiorari denied (1999), 526 U.S. 1007, 119 S.Ct. 1148,143 L.Ed.2d 214. Although the Fourth Amendment does not explicitly provide that violations of its provisions will result in suppression of evidence obtained as a result of the violation, the United States Supreme Court has held that the exclusion of that evidence is an essential part of theFourth Amendment. See Mapp v. Ohio (1961), 367 U.S. 643, 657,81 S.Ct. 1684, 6 L.Ed.2d 1081.
 {¶ 9} A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. Whren v. United States (1996), 517 U.S. 806,809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89. However, an investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity. Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299, citing Terryv. Ohio (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889. "To justify a particular intrusion, the officer must demonstrate `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Weisner,87 Ohio St.3d at 299, quoting Terry, 392 U.S. at 21. In evaluating these facts and inferences, the court must consider the totality of the surrounding circumstances. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107,70 L.Ed.2d 94. "Thus, `if the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop.'" State v. Hunt (Dec. 7, 1994), 9th Dist. No. 94CA005795, at 3, quoting State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716, at 4, appeal not allowed (1994), 70 Ohio St.3d 1474.
 {¶ 10} In the hearing on the motion to suppress, Officer Schmidt testified to the events that led to Appellee's arrest on November 18, 2002. Officer Schmidt stated that he was patrolling the area of Hudson and Graham Roads, in Cuyahoga Falls, Ohio, and that he was equipped with a "Pearl Laser III, hand held, battery operated" radar device. Officer Schmidt testified that the device was functioning properly because, prior to his shift, he did a routine check of the laser. He explained that he was trained to use the radar unit and that he was also taught to visually estimate a vehicle's speed.
 {¶ 11} On the night in question, Officer Schmidt stated that he was parked at a light posted on Graham Road when Appellee's vehicle "flew by[.]" By observing the speed of the vehicle, Officer Schmidt stated: "I knew [Appellee's] vehicle was obviously going over the posted speed limit of 35 miles an hour, I estimated the vehicle's speed at approximately 50." Officer Schmidt further testified:
"As the vehicle passed by me, it continued west on Graham, I pulled out in the same direction — same direction — [the vehicle] was going west on Graham, at which time I grabbed my laser unit, which was sitting next to me, activated it, and I got a reading of around 43 to 45 miles an hour. I was not able to track the vehicle any longer because of the contour of the road, there was a small hill that the vehicle disappeared over."
 {¶ 12} Officer Schmidt stated that after he determined that Appellee's vehicle was traveling approximately forty-three miles per hour, at least eight miles above the posted speed limit, he began to follow Appellee's vehicle. The officer testified that he observed Appellee's vehicle slightly weave within its lane. As Officer Schmidt continued to follow Appellee's vehicle, "the vehicle made [an] immediate turn into what I initially thought was the gas station. But then as I — I looked again, the vehicle had turned into a closed business, I believe it's a doctor's or dentist's office of some sort." Officer Schmidt further testified:
"Well, I passed — I passed the vehicle thinking that it was a gas station. As I turned onto Bath [Road], I was going to turn around and see why the vehicle was in a closed business. As I turned around, I observed the vehicle pulling out of that business, continuing west on Graham, and then turning right onto Bath, at which time I decided to initiate a traffic stop due to suspicious reasons."
 {¶ 13} On cross-examination, Officer Schmidt explained why he initially stopped Appellee.
"[Defense counsel]. All right. You did not — well, you've indicated that you decided to stop [Appellee] for suspicious behavior and suspicious driving, is that what you said?
"[Officer Schmidt]. Suspicious vehicle pulling into a closed business at 3:00 in the morning.
"[Defense counsel]. Okay. And that was your reason to stop him?
"[Officer Schmidt]. Correct.
"[Defense Counsel]. Not because of the speed?
"[Officer Schmidt]. No.
"[Defense Counsel]. Well, what was — what was this about him pulling into this closed business that was so suspicious?
"[Officer Schmidt]. Any vehicle, at 3:00 in the morning, pulling into a closed business I find as suspicious activity."
 {¶ 14} Officer Schmidt further stated that although he observed Appellee speeding, he did not charge him with violating Ohio traffic laws for speeding.
 {¶ 15} Appellee also testified at the hearing. He stated that he was traveling at approximately thirty-five to forty miles per hour, or "[m]aybe 37[,]" as he was driving along Graham Road. Appellee stated that he knew that he was driving under forty miles per hour because the speed limit was thirty-five and "I never speed." When asked why he pulled into a closed business at 3:00 a.m., he responded: "I pulled in there to get a pack of cigarettes out of my glove box and light a cigarette[.]" Appellee stated that he was in the parking lot of the closed business for "[l]ess than 30 seconds."
 {¶ 16} Based upon the evidence presented at the hearing on the motion to suppress, we conclude that Officer Schmidt had a reasonable suspicion, based on specific and articulable facts, that Appellee was committing a criminal act. Officer Schmidt testified that he visually witnessed Appellee speeding. "`[A] police officer's visual perception that a motor vehicle was speeding, coupled with years of experience, constitutes specific and articulable facts which provide the police officer with reasonable grounds to make an investigatory stop[.]'" Statev. Porter (Sept. 15, 2000), 11th Dist. No. 99-P-0061, 2000 Ohio App. LEXIS 4211, at *10, quoting State v. Lawless (June 25, 1999), 11th Dist. No. 98-P-0048, 1999 Ohio App. LEXIS 2941. The officer also determined that Appellee was speeding with the Pearl Laser III radar unit. Additionally, the officer stated that he noticed Appellee weave within his lane, and "weaving, whether within or outside one's lane, is indicative of erratic driving which authorizes the police to stop a vehicle." (Quotations omitted.) State v. Lopez (Dec. 3, 1993), 6th Dist. No. L-92-422, 1993 Ohio App. LEXIS 5711, at *8. These facts alone are sufficient for Officer Schmidt to suspect that Appellee violated Ohio's traffic laws. See Cuyahoga Falls v. Stephenson (June 18, 1997), 9th Dist. No. 18011, at 5-6, appeal not allowed (1997), 80 Ohio St.3d 1431
(holding that a police officer had reasonable suspicion to initiate a traffic stop because the police officer observed the defendant cut his vehicle sharply in front of the officer's vehicle, weave within his own lane, and turn into a closed establishment without employing his turn signal); State v. Carlson (1995), 102 Ohio App.3d 585, 593; State v.Calhoun (May 3, 1995), 9th Dist. No. 94CA005824, at 5; Hunt, supra at 4.
 {¶ 17} Furthermore, we find that it is irrelevant whether Officer Schmidt actually stopped Appellant because he violated Ohio traffic laws or because he was suspicious that something foul was afoot based only on the fact that Appellee pulled into a closed business at 3:00 a.m. "[T]he question whether a Fourth Amendment violation occurred in this case depends upon an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind." (Emphasis added.) Dayton v. Erickson, 76 Ohio St.3d 3, 6. Thus, an officer's subjective motive does not invalidate behavior that is objectively justified under the Fourth Amendment. State v. Jones (Apr. 28, 1999), 9th Dist. No. 98CA007068, at 6.
 {¶ 18} Under an objective standard, this Court must ask: "[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, 392 U.S. at 21-22. "This question must be answered in light of the totality of the surrounding circumstances as seen `through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'"State v. Jones (June 2, 1999), 9th Dist. No. 19263, at 8, quoting Statev. Andrews (1991), 57 Ohio St.3d 86, 87-88, certiorari denied (1991),501 U.S. 1220, 111 S.Ct. 2833, 115 L.Ed.2d 1002. Under the facts of this case, we find that a reasonable and prudent police officer that observed the same traffic violations that Officer Schmidt observed would have reasonable suspicion to believe that Appellee was engaged in criminal activity. Therefore, it matters very little that the only reason Officer Schmidt stopped Appellee was because it appeared as if Appellee was attempting to hide something criminal. Once Officer Schmidt observed Appellee violate Ohio traffic laws, he had the authority to stop Appellee even if he chose to do so only on the ground that Appellee appeared suspicious. As such, we conclude that Appellee's Fourth Amendment rights were not violated when Officer Schmidt stopped Appellee, and therefore the trial court erred when it granted Appellee's motion to suppress.
 {¶ 19} Accordingly, the state's sole assignment of error is well taken.
 III {¶ 20} The state's assignment of error is sustained. The judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
SLABY, P.J.
BAIRD, J. CONCUR
[1] In C.A. No. 21422, the state separately appealed the trial court's January 27, 2003 decision which dismissed Appellee's administrative license suspension and reinstated his driver's license. On June 18, 2003, this Court issued an order which sua sponte consolidated the instant appeal with C.A. No. 21422 for the purposes of reviewing the trial court record and appellate filings.