OPINION
{¶ 1} This appeal returns to us upon a granting of a motion for reconsideration based upon a finding that the transcript of the suppression hearing was inadvertently not included in the record sent to this Court.
 {¶ 2} This is an appeal from a judgment of conviction on one count of OMVI after a jury trial subsequent to a denial of a motion to suppress appellant's arrest and an appeal of his ALS.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On August 24, 2003, Patrolman Andrew Burns of the Mount Vernon Police Department was investigating a complaint for telephone harassment at 105 Mansfield Avenue. The complainant claimed that Appellant was calling him and threatening him. While Patrolman Burns was taking this complaint, he was informed by someone at the residence that Appellant had just driven past the residence in his truck.
 {¶ 4} Patrolman Burns left said residence and proceeded to follow Appellant.
 {¶ 5} At no time did Patrolman Burns witness any erratic driving or traffic violations. (T. at 11).
 {¶ 6} However, prior to following Appellant, Patrolman Burns had received a radio transmission notice from the Knox County Sheriff to "be on the lookout for" Appellant's vehicle as a result of a "possibly" intoxicated driver and a "possible" suicide threat. (T. at 6).
 {¶ 7} Based on this radio transmission, Patrolman Burns initiated a stop of Appellant's vehicle to check on Appellant's well being. (T. at 12).
 {¶ 8} Upon stopping appellant's vehicle and ordering Appellant out of the vehicle, Patrolman Burns noticed that Appellant had glassy eyes, was uncoordinated, and exhibited poor balance. Appellant also performed the field sobriety tests poorly.
 {¶ 9} When asked to submit to a chemical breath test, Appellant refused.
 {¶ 10} Another unit arrived on the scene which discovered an unloaded Browning 12 gage shotgun on the front seat partially covered by a blanket.
 {¶ 11} Appellant was arrested and charged with a OMVI, in violation of Mount Vernon City Ordinance § 3.01(A)(1) and improper transportation of a firearm in a motor vehicle in violation of Mount Vernon City Ordinance § 549.04(C).
 {¶ 12} Because of his refusal to submit to a breath test, Appellant was placed under an Administrative License Suspension at the time of his arrest.
 {¶ 13} Appellant filed an appeal to the Administrative License Suspension and a Motion to Suppress Evidence.
 {¶ 14} An oral hearing on the motion to suppress was heard on October 21, 2003. At said hearing, Patrolman Burns testified that he relied on the radio dispatch to stop Appellant.
 {¶ 15} The trial court overruled Appellant's motion to suppress.
 {¶ 16} On January 15, 2004, the matter proceeded to jury trial. The jury returned a verdict of not guilty on the charge of improper transportation of a firearm and a verdict of guilty on the OMVI offense. The ALS was terminated and replaced by a court suspension.
 {¶ 17} A Judgment Entry filed January 22, 2004, formally overruled Appellant's Administrative License Suspension appeal.
 {¶ 18} The Sentencing Entry was originally filed January 20, 2004, but was corrected by an Entry filed on January 27, 2004, to include a fine imposed at the time of sentencing.
 {¶ 19} Appellant now appeals his conviction and the denial of his Administrative License Suspension, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 20} "I. Trial court erred in finding that there was a legal basis for the initial stop and detention of the appellant and in overruling the appellant's motion to suppress evidence.
 {¶ 21} "II. The trial court erred in finding that there were reasonable grounds to arrest the defendant for omvi and in denying appellant's administrative license suspension appeal."
 I. {¶ 22} Appellant argues that the trial court erred in denying his motion to suppress and in finding that Patrolman Burns had probable cause to arrest appellant. We agree.
 {¶ 23} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19;State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger
(1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See:State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993),85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. In this case, Appellant is contending that the trial court incorrectly decided the ultimate issue.
 {¶ 24} The law concerning when a traffic stop is constitutionally permissible is abundantly clear. A police officer may conduct a traffic stop, where he "has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation. . . . regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." Dayton v.Erickson (1996), 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091.
 {¶ 25} Appellant argues that Patrolman Burns did not have probable cause to stop and detain Appellant. Appellant argues that no evidence was presented by the State at the suppression hearing with regard to what precipitated the dispatch.
 {¶ 26} In support of his argument Appellant cites us toMaumee v. Weisner (1999), 87 Ohio St.3d 295, wherein the Ohio Supreme Court held "where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity."
 {¶ 27} In Maumee, supra, the Ohio Supreme Court held:
 {¶ 28} "Generally, at a suppression hearing, the state bears the burden of proving that a warrantless search or seizure meets Fourth Amendment standards of reasonableness. 5 LaFave, Search and Seizure (3 Ed. 1996), Section 11.2(b). In the case of an investigative stop, this typically requires evidence that the officer making the stop was aware of sufficient facts to justify it. Terry v. Ohio (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 1880,20 L.Ed.2d 889, 906. But when an investigative stop is made in sole reliance upon a police dispatch, different considerations apply.
 {¶ 29} "A police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer. United States v. Hensley
(1985), 469 U.S. 221, 231, 105 S.Ct. 675, 681, 83 L.Ed.2d 604,613. This principle is rooted in the notion that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." Id. at 231, 105 S.Ct. at 682,83 L.Ed.2d at 614, quoting United States v. Robinson (C.A.9, 1976), 536 F.2d 1298, 1299. When a dispatch is involved, therefore, the stopping officer will typically have very little knowledge of the facts that prompted his fellow officer to issue the dispatch. The United States Supreme Court has reasoned, then, that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers relying upon adispatch or flyer "were themselves aware of the specific facts which led their colleagues to seek their assistance." It turns instead upon "whether the officers who issued the flyer" or dispatch possessed reasonable suspicion to make the stop. (Emphasis sic.) Id. at 231, 105 S.Ct. at 681,83 L.Ed.2d at 613 (discussing and applying Whiteley v. Warden, Wyoming StatePenitentiary (1971) 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, to reasonable suspicion in the context of a police flyer). Thus, "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." Hensley, 469 U.S. at 232,105 S.Ct. at 682, 83 L.Ed.2d at 614.
 {¶ 30} "Many courts in Ohio and other jurisdictions have interpreted Hensley and Whiteley to require proof at the suppression hearing that the officers issuing the dispatch
possessed sufficient knowledge of facts or information to justify the stop, where the stopping officer himself did not. SeeState v. Hill, supra; State v. Ramsey (Sept. 20, 1990), Franklin App. Nos. 89AP-1298 and 89AP-1299, unreported, 1990 WL 135867. Other Ohio courts have held instead that an officer's statement that he relied upon a dispatch is, by itself, sufficient to justify the stop, regardless of the knowledge of the officer issuing the dispatch. See, e.g., State v. Good
(1987), 37 Ohio App.3d 174, 525 N.E.2d 527; State v. Janda
(Apr. 14, 1993), Lorain App. No. 92CA005416, unreported, 1993 WL 120549. See, also, State v. Penn (Aug. 2, 1994), Franklin App. No. 93AP-953, unreported, 1994 WL 409758.
 {¶ 31} "We believe the latter approach is inconsistent with United States Supreme Court precedent and fails to adequately protect the citizen's Fourth Amendment rights. Accordingly, we clarify here that where an officer making an investigative stoprelies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity."
 {¶ 32} "* * *
 {¶ 33} "Where, as here, the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. See id.
The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. Factors considered "`highly relevant in determining the value of [the informant's] report'" are the informant's veracity, reliability, and basis of knowledge. Id. at 328,110 S.Ct. at 2415, 110 L.Ed.2d at 308, quoting Illinois v. Gates
(1983), 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527,543."
 {¶ 34} The Supreme Court in Maumee, supra, then went on to discuss the type of evidence that may be used for this purpose including the source of the information. Among the categories of informants are the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant. Id.
 {¶ 35} "The United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability."
 {¶ 36} The Court then proceeded to review the degree of reliability associated with each of the above types of informants.
 {¶ 37} Upon review of the transcript of the suppression hearing we find that the only evidence presented was testimony by Patrolman Burns and Patrolman Tharp. Patrolman Tharp was did not initiate the stop or Appellant nor was he present when such occurred. Patrolman Burns, who stopped Appellant, testified that he did so based upon a dispatch he received earlier that evening from the County over the radio (T. at 6, 12). No evidence was produced as to the source of the information which led to the radio dispatch. We cannot begin to gage the reliability of the information or its source because we do not know if such came in as an anonymous tip, a known source or an identified informant.
 {¶ 38} Based on the foregoing, we find that the State failed to demonstrate facts "precipitating the dispatch justified a reasonable suspicion of criminal activity."
 {¶ 39} Appellant's first Assignment of Error is sustained.
 II. {¶ 40} In his second assignment of error, Appellant claims that the trial court erred when it denied appellant's appeal of his administrative license suspension. We agree.
 {¶ 41} For the same reasons contained in our first assignment of error, we also sustain Appellant's second assignment of error. Since the state had no probable cause to stop or arrest Appellant, Appellant's appeal of his administrative license suspension is also hereby sustained.
 {¶ 42} The decision of the Mount Vernon Municipal Court is reversed and remanded for proceeding consistent with this opinion.
Boggins, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Mount Vernon Municipal Court, Knox County, Ohio, is reversed and remanded. Costs assessed to appellee.